**VASSEGHI LAW GROUP**

October 24, 2025

**Via FEDERAL EXPRESS**
United States District Court
Eastern District of New York
<u>Attn:</u> Hon. Eric N. Vitaliano U.S.D.J
225 Cadman Plaza East
Courtroom 4C South
Brooklyn, NY 11201-1804

**Via FEDERAL EXPRESS**
United States District Court
Eastern District of New York
<u>Attn:</u> Hon. Cheryl M. Pollak U.S.M.J
225 Cadman Plaza East
Courtroom 13B South
Brooklyn, NY 11201-1804

*Re: Pitterson v. Flavors LLC et al – 1:25-cv-03029 ENV-CLP*

Dear Honorable Judge Vitaliano,

Defendants Flavors LLC d/b/a The Contracts Lounge ("Flavors") and Samia Bingham ("Bingham") (collectively "Defendants"), are represented by their undersigned counsel.

Documents filed herewith:

September 26, 2025 – Defendants' Notice of Motion to Dismiss under Rule 12(b)(6) and Memorandum ISO Defendants' Motion to Dismiss under Rule 12(b)(6) and cover letter.

October 17, 2025 – Plaintiff's Opposition to Defendants' Motion to Dismiss Under Rule 12(b)(6) and cover letter.

October 24, 2025 - Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss under Rule 12(b)(6).

Sincerely,

VASSEGHI LAW GROUP

Roya Vasseghi

September 26, 2025

**<u>Via ECF Only</u>**

**Re: Pitterson v. Flavors LLC et al – 1:25-cv-03029 ENV-CLP**

Dear Honorable Judge Vitaliano,

Defendants Flavors LLC d/b/a The Contracts Lounge ("Flavors") and Samia Bingham ("Bingham") (collectively "Defendants"), are represented by their undersigned counsel.

Defendants file herewith their Notice of Motion to Dismiss under Rule 12(b)(6) and Memorandum ISO Defendants' Motion to Dismiss under Rule 12(b)(6).

Sincerely,

VASSEGHI LAW GROUP

Roya Vasseghi

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

| | |
|---|---|
| JANELLE PITTERSON, on behalf of herself and others similarly situated, | |
| Plaintiffs, | Case No: 1:25-cv-3029 (ENV) (CLP) |
| vs. | **NOTICE OF DEFENDANTS' MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6)** |
| FLAVORS LLC d/b/a THE CONTRACTS LOUNGE, and SAMIA BINGHAM, | |
| Defendants. | |

Please take notice that pursuant to Federal Rule of Civil Procedure 12(b)(6), and upon the accompanying memorandum of law and all prior pleadings herein, Defendants Flavors LLC d/b/a The Contracts Lounge and Samia Bingham, by and through their undersigned counsel, move the Court for an Order dismissing the Class & Collective Action Complaint of Plaintiff Janelle Pitterson and for such other and further relief as the Court deems just and proper.

Pursuant to this Court's Order dated September 24, 2025, Plaintiffs opposition papers are due on October 17, 2025. Defendants shall serve their reply papers on October 24, 2025. The fully briefed motion shall be filed on October 24, via ECF, in accordance with Individual Rule III.D (the "Bundling Rule").

Date: September 26, 2025

Respectfully submitted,

/s/ Roya Vasseghi
Roya Vasseghi (NY Bar No. 4960894)
VASSEGHI LAW GROUP
9663-D Main Street
Fairfax, VA 22031
(703) 215-5358 Tel.
(703) 563-7401 Fax
roya@vasseghilaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2025, a true and correct copy of the foregoing was

served via email only to the following:

Emanuel Kataev, Esq.
SAGE LEGAL LLC
18211 Jamaica Avenue
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff Janelle Pitterson*


<u>/s/ Roya Vasseghi</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

| | |
|---|---|
| JANELLE PITTERSON, on behalf of herself and others similarly situated, | |
| Plaintiffs, | Case No:  1:25-cv-3029 (ENV) (CLP) |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)** |
| FLAVORS LLC d/b/a THE CONTRACTS LOUNGE, and SAMIA BINGHAM, | |
| Defendants. | |

Date:  September 26, 2025

Respectfully submitted,

/s/ Roya Vasseghi
Roya Vasseghi (NY Bar No. 4960894)
VASSEGHI LAW GROUP
9663-D Main Street
Fairfax, VA 22031
(703) 215-5358 Tel.
(703) 563-7401 Fax
roya@vasseghilaw.com

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

III.  LEGAL STANDARD ........................................................................................ 2

IV.   ARGUMENT ...................................................................................................... 3

   A.   Pitterson's Claims Should be Dismissed Because  the Eastern District of New York is

   not a Proper Forum. ............................................................................................. 3

      1.   The forum-selection clause was reasonably communicated. .................... 4

      2.   The forum-selection clause is mandatory in nature. ................................. 4

      3.   The forum-selection clause covers the claims in this dispute. .................. 5

      4.   Pitterson is bound by the forum-selection clause. .................................... 6

V.    CONCLUSION ................................................................................................... 7

# **TABLE OF AUTHORITIES**

## Cases

*Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696 (2d Cir. 2009).....................................7

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013)....................................3

*Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46 (E.D.N.Y. 2020) ......................................5

*Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434 (E.D.N.Y. Feb. 17, 2025) ………………………3

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)....................................................1

*Effron v. Sun Line Cruises*, 67 F.3d 7 (2d Cir. 1995) ...................................................................4

*Fasano v. Guoqing Li*, 47 F.4th 91 (2d Cir. 2022)…………………………………………… .3, 4

*Garcia v. S. Grover, CPA, PLLC*, No. 18-CV-3000,

  2018 U.S. Dist. LEXIS 181841 (S.D.N.Y. Oct. 19, 2018)…………………………………..5

*Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221 (2d Cir. 2011) ..............................5

*Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*,

  211 F.R.D. 71 (E.D.N.Y. 2002)....................................................................................................3

*Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990)…………………………………………………..3

*LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147 (E.D.N.Y. 2012).....................7

*Magi XXI, Inc. v. Stato della Citta del Vaticano*, 818 F. Supp. 2d 597 (E.D.N.Y. 2011)……....5

*Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6 (E.D.N.Y. 2014)...........................................7

*Ortho-Clinical Diagnostics, Inc. v. Mazuma Capital Corp.*, No. 18-CV-6416, 2019 U.S. Dist.

  LEXIS 36910 (W.D.N.Y. Mar. 7, 2019) .....................................................................................3

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) .....................................................4, 5

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) .............................................................4

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).........................................................3, 4

*TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 473 (2d Cir. 2011)…………………….....2

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021)........................................... 1

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 2, 3

Flavors, LLC d/b/a The Contracts Lounge ("Defendant Flavors") and Samia Bingham ("Defendant Bingham") (collectively "Defendants"), by and through undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Under Rule 12(b)(6). This Court should dismiss Plaintiff Janelle Pitterson's ("Pitterson") individual claims and her Collective and Class Actions because Pitterson ignored the mandatory forum-selection clause requiring her to bring these same claims in Prince George's County, Maryland.

## I.    INTRODUCTION

Defendant Bingham is the founder and operator of Defendant Flavors, a company which is located in and operates out of Prince George's County, Maryland. On May 7, 2024, Pitterson, through her limited liability company "Homegrown by Chef Janelle" ("Homegrown"), executed an independent contractor agreement ("Agreement") with Defendant Flavors. Exh. A.[1] As discussed in greater detail below, the Agreement contains a forum-selection clause in which Pitterson agreed that "any controversy or claim(s) arising out of or relating to" the Agreement "must be brought" in Prince George's County, Maryland. *Id.* Pitterson's claims in these proceedings clearly arise out of and relate to the Agreement, as her relationship with Defendants existed because of the Agreement and only for its duration. *Id.* Because an enforceable forum-selection clause between Pitterson and the Defendants provides courts in Prince George's County, Maryland with sole and exclusive jurisdiction regarding claims arising out of or relating to the Agreement, this Court should dismiss this case.

---

[1] Because the Agreement is incorporated by reference in the Complaint at paragraphs 17, 118, and 122 the Court may consider it in deciding this motion to dismiss pursuant to Rule 12(b)(6). *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

1

## II.    BACKGROUND

On May 30, 2025, Pitterson filed, on behalf of herself and similarly situated individuals who have been employed by Defendants, the instant complaint, which alleges that Defendants (i) misclassified employees as independent contractors; (ii) failed to pay employees their regular wage rate and, when required, their overtime wage rate, for all hours worked; (iii) provided employees untimely payments of all wages owed; and (iv) failed to provide employees with Notices of Pay Rate and accurate wage statements. Plaintiff acknowledges that Defendant Flavors has a primary office located in Hyattsville, Maryland, which is a city in Prince George's County, Maryland, and that Defendant Bingham also resides in Maryland. Compl. ¶¶ 11-12. Plaintiff also acknowledges that Pitterson executed an Agreement with the Defendants. Compl. ¶¶ 17, 118 and 122. The Agreement contains the following forum-selection clause:

> The Parties will attempt in good faith to resolve any controversy or claim(s) arising out of or relating to this Agreement through discussions between the authorized representatives or designees of the Parties. If the discussions are unsuccessful, the Parties agree that any action asserting a claim by one Party against the other must be brought in the state or federal court with appropriate jurisdiction in Prince George's County, Maryland, unless jurisdiction is prescribed elsewhere in this Agreement or dictated by Company Contract or federal law.

Exh. A. (Article XX.J.1).

Notwithstanding the Agreement's plain language, Pitterson has filed suit in the Eastern District of New York. Defendants have filed the instant motion to dismiss under Rule 12(b)(6) because Pitterson entered into a valid and enforceable agreement that this Court, among others, does not have jurisdiction over Pitterson's claims.

## III.    LEGAL STANDARD

A motion to dismiss pursuant to a forum-selection clause may be pursued under Federal Rule of Civil Procedure 12(b)(6). *See TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 473 (2d Cir. 2011) ("[A] defendant may seek enforcement of a forum selection clause through a Rule

2

12(b) motion to dismiss, even when the clause provides for suit in an alternative federal forum."); *Ortho-Clinical Diagnostics, Inc. v. Mazuma Capital Corp.*, No. 18-CV-6416, 2019 U.S. Dist. LEXIS 36910, at *10 (W.D.N.Y. Mar. 7, 2019) ("[T]he Second Circuit rule . . ., affirming the use of Rule 12(b) to seek dismissal based on a forum-selection clause, remains good law at least with respect to Rule 12(b)(6)."). *See also Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434 (E.D.N.Y. Feb. 17, 2025) (dismissing Fair Labor Standards Act and New York Labor Law claims on 12(b)(6) motion, where parties executed contract with mandatory forum selection clause rendering Dallas County, Texas as the sole and exclusive venue for all proceedings arising out of the contract).

## IV.    ARGUMENT

Under the Agreement, Pitterson was required to file any claims arising out of or relating to Pitterson's relationship with Defendants in Prince George's County, Maryland. Pitterson's claims should be dismissed pursuant to Rule 12(b)(6) because the Eastern District of New York is well outside of the borders of Prince George's County, Maryland and, as such, is not a proper forum.

### A.  Pitterson's Claims Should be Dismissed Because the Eastern District of New York is not a Proper Forum.

"The enforcement of valid forum–selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Fasano v. Guoqing Li*, 47 F.4th 91, 100–101 (2d Cir. 2022) (citing *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) (cleaned up)). A forum-selection clause is presumed to be enforceable, *id.*, and should be honored as written, *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 84 (E.D.N.Y. 2002).

In diversity cases, courts in the Second Circuit should enforce a contractual forum-selection clause "unless it is clearly shown that enforcement would be unreasonable and unjust or that the clause was obtained through fraud or overreaching." *Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir. 1990) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "If the forum clause

was communicated to the resisting party, has mandatory force, and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362–63 (2d Cir. 1993)).

Because the parties agreed that the Agreement shall be construed, interpreted, and governed by federal common law of contracts (Exh. A), federal precedent interpreting forum-selection clauses apply here. Applying these principles, this Court should enforce the Agreement as written and dismiss Pitterson's complaint.

### 1. The forum-selection clause was reasonably communicated.

A forum-selection clause is reasonably communicated if it is phrased in clear and unambiguous language. *See Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir. 1995). Here, the forum-selection clause uses plain language. It is in the same font style and size as other terms in the Agreement, which is only about sixteen (16) pages in length (without Schedules, i.e., exhibits). And it is in the first paragraph of the Agreement's "Dispute Resolution" section. Pitterson also signed the Agreement. Thus, the language, formatting, and length of the Agreement's forum-selection clause, and Pitterson's own signature on the Agreement, warrant a finding that it was reasonably communicated to Pitterson.

### 2. The forum-selection clause is mandatory in nature.

"A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386. "Mandatory forum selection clauses . . . require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie." *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) (emphasis in original).

Here, Pitterson agreed that if she or her authorized representative could not resolve "claim(s) arising out of or relating to" the Agreement which provided the terms of her relationship

with the Defendants, "any action asserting a claim . . . *must be brought* in the state or federal court with appropriate jurisdiction in Prince George's County, Maryland[.]" Exh. A. (Article XX.J.1) (emphasis added). Because the forum-selection clause unambiguously states that any claims arising out of or relating to the Agreement *must be brought* in Prince George's County, Maryland, it confers exclusive jurisdiction on the courts in that forum and is mandatory in nature.

### 3. The forum-selection clause covers the claims in this dispute.

"To be presumptively enforceable a forum selection clause must cover the relevant claims and parties." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011) (citing *Phillips,* 494 F.3d at 383). Federal and state-law wage claims are generally subject to a forum-selection clause where, as here, the clause states that it covers claims that are "relating to" or "arising out of" the agreement. *See generally Garcia v. S. Grover, CPA, PLLC*, No. 18-CV-3000, 2018 U.S. Dist. LEXIS 181841 at *6-8 (S.D.N.Y. Oct. 19, 2018) (collecting cases); *Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51 (E.D.N.Y. 2020) ("Phrases like '[a]ny claim or controversy arising out of or relating to this agreement' or 'all differences arising between the parties to this agreement as to interpretation, application or performance' are classic examples of broad clauses."). The forum-selection clause at issue here is appropriately broad and inclusive to cover each of Pitterson's claims against the Defendants.

Pitterson, through artful pleading, asks the Court to ignore that the relationship with Defendants is entirely predicated on Pitterson's voluntary decision to execute the Agreement. For example, Pitterson's claim that she was misclassified as an independent contractor inherently *relates to* the Agreement, which, again, is referenced in Pitterson's Complaint. In this regard, the Agreement states that "[t]he Parties expressly agree that the relationship between the Parties *shall be that of independent contractors* and the relationship between them *shall not be considered a . . . employer-employee . . .* relationship." Exh. A (Article VII) (emphasis added).

5

Pitterson's remaining claims also *arise out of* the Agreement. The Complaint alleges that Defendants did not pay Pitterson her regular wage rate, a dispute that necessarily arises from the Agreement's terms concerning compensation. Exh. A (Article V). Further, the Complaint alleges that Pitterson was not paid in a timely fashion, an issue which certainly arises out of the Agreement's terms concerning invoicing and the timing of payments. *Id.* Likewise, the claims concerning whether Defendants were obligated to provide Pitterson certain notices and wage statements arise out of the Agreement's terms concerning such responsibility, including, for example, language indicating that "personnel who perform any part of the Services [of the Agreement] shall be under the employment, and ultimate control, management, and supervision of Consultant[,]" i.e., Pitterson's company, Homegrown. *Id.*

### 4. Pitterson is bound by the forum-selection clause.

As a signatory to the Agreement, Pitterson cannot reasonably dispute being bound to the Agreement's forum-selection clause. But even if Pitterson were to raise such an argument, presumably on the basis that Pitterson only signed the agreement as a representative of Homegrown, the Court should find that she is bound to the Agreement under well-settled precedent regarding non-signatory status.

A party's status as "a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Rather, a forum-selection clause may be enforced against a non-signatory where enforcement was foreseeable, *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 25 (E.D.N.Y. 2014) (collecting Second Circuit cases), or where the non-signatory benefited from the contract with the forum-selection clause, *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 155 (E.D.N.Y. 2012) ("[C]ourts in this Circuit have specifically applied the theory of direct benefits estoppel to cases involving forum selection clauses.").

Here, by signing the Agreement as an officer of her company, Pitterson created a foreseeable benefit (i.e., compensation) that would run only to Pitterson and, as such, had to foresee that the Agreement's forum-selection clause would be enforced against claims arising out of or relating to that benefit and other obligations set forth therein.

## V.    CONCLUSION

Because Pitterson ignored the valid and enforceable forum selection clause requiring this action be brought in Prince George's County, Maryland, Defendants respectfully request that the Court grant this motion to dismiss.

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, a true and correct copy of the foregoing was

served via email only to the following:

Emanuel Kataev, Esq.
SAGE LEGAL LLC
18211 Jamaica Avenue
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff Janelle Pitterson*

/s/ Roya Vasseghi

# EXHIBIT A

## <u>INDEPENDENT CONSULTING AGREEMENT</u>

This Independent Consulting Agreement ("Agreement") is between Flavors, LLC (dba Flavors), a Maryland Limited Liability Company with offices at <u>6504 America Boulevard, Suite 105A, Hyattsville, MD  20782</u> (referred to as "Company") and Homegrown By Chef Janelle,

*



with offices located at 30 Wall Street, 8th Floor

New York, NY 10005

(referred to as "Consultant"). They shall be referred to individually as "Party" or collectively as the "Parties." This Agreement is effective upon the date of the last affixed signature ("Effective Date").

## ARTICLE I. DEFINITIONS.

–

In addition to the terms defined elsewhere in this Agreement, the following terms when capitalized shall have the meanings as set forth below:

**A. Agreement**  refers to this Consulting Agreement only when capitalized.

**B. Company Contract** refers to the contract between the Company and the Grant Provider/Federal Government providing the monies for the Program.

**C. Subject Matter Expert** is the Consultant who is being hired as a subject matter expert to produce and develop exclusive content and materials for the Company and Company's Program.

**D. Grant Provider** refers to the federal government agency managing oversight and distribution of Program funding.

**E. Program** is defined as the Company's virtual training program(s) cultivated for their community of culinary students.

**F. Successfully Performed** is defined as Consultant's adherence to all contract terms and conditions, program goals and objectives, timeliness of meeting milestones, and quality deliverables under this Agreement.

**G. Technical Direction** refers to guidance, feedback, and instruction provided by the Company on the syllabus, outline, and materials to ensure that content and material development and instruction meet the expectations and overall learning objectives and goals of the Program as well as the key metrics of the Grant Provider.

**H. Technical Lead** is the hired instructor and Subject Matter Expert responsible for development and delivery of the Program content and materials. The technical lead is the point of contact for all communications for this Agreement, unless stated otherwise in writing.

## ARTICLE II. BACKGROUND.

**A.**  Company has been awarded a federal grant to develop an innovative and exclusive virtual training program(s) ("**Program**");

**B.**  Company issued a Request for Proposals to recruit Subject Matter Experts to participate in the Program;

**C.**  Consultant submitted a proposal in response to Company's Request for Proposals for Consultant to develop and/or provide educational curriculum and content based on their area of expertise, and to teach said curriculum at the designated teaching times to Program participants;

**D.**  Company is satisfied that the Consultant has the necessary skill, expertise, and knowledge to be a Subject Matter Expert and has approved Consultant's Proposal; and

**E.**  Company and Consultant desire to enter into this Agreement to perform the services set forth in Consultant's Proposal and as required by the Company according to the terms of this Agreement.

**The Parties hereby agree to be legally bound according to the following terms and conditions:**

## ARTICLE III. SCOPE OF SERVICES.

**A.**  The scope of work described in Schedule A (the "**Services**") will be successfully performed by the Consultant. Consultant must meet all performance requirements in Schedule A, if any, for deliverables to be deemed acceptable by the Company. Consultant agrees to adhere to the Company's requirements for performance of Services, including but not limited to, complying with delivery and performance deadlines in order to assist the Company with adhering to the terms of the federal grant funding the Program. Consultant shall perform their duties as a Subject Matter Expert in a professional manner and in compliance with all terms and conditions provided in this Agreement.

**B.**  Consultant designates
*

| Culinary Expert and Chef |
|---|

as Consultant's Technical Lead/Subject Matter Expert and as the Company's contact point responsible for managing the performance of the Services by Consultant and for coordinating performance with Company.

**C.**  The Company has set guidelines for the Program and the Consultant agrees to submit a curriculum outline and/or proposed syllabus to the Company for pre-approval prior to the creation of any Program materials. The Company, in its sole discretion, reserves the right to accept the curriculum outline and/or proposed syllabus or provide Technical Direction to ensure the Consultant's curriculum aligns with the Program goals, vision, and expected outcomes. Once approved, the Consultant is free to create and deliver content freely within the Program guidelines according to the approved curriculum.
   1. To be valid, Technical Direction: must be consistent with the general scope of work set-forth in Schedule A; shall not change the expressed terms, conditions, or specifications incorporated into this Agreement; and shall not constitute a basis for extension to the Agreement's delivery schedule or increase in the Agreement fee; and must be provided to Consultant's Technical Lead, when possible, or directly to the Consultant. Any dispute over or reasonable belief that the Technical Direction to the Consultant exceeds the limitations in this Paragraph shall be communicated to the Company as outlined in Subsection C.2. below.
   2. If Consultant believes any direction exceeds these limitations, Consultant shall notify Company in writing within ten (10) days of receipt of such Technical Direction. Consultant        shall be obligated to continue with performance as directed, notwithstanding any dispute as to whether the   Technical Direction exceeds the limitation stated above.

**D.**  Company shall review the deliverables and/or provide input to Consultant for performance related queries.

**E.**  Notwithstanding any other provisions of this Agreement or any document referenced herein, the Company's Founder & CEO, Samia Bingham, is the only individual authorized to make changes in the scope or nature of the work required by this Agreement. In the event Consultant implements any change at the direction of any other person, the change    will be considered as having been made without authority and an adjustment will not be made in the Agreement fee or delivery schedule as a result thereof.

This Agreement shall be effective beginning on the **Effective Date** until the Agreement is terminated according to Article X: TERMINATION, or on the date of termination of the Company's contract with the federal government Grant Provider (referred to as "**Company Contract**").

The Company reserves the right to amend the term of this Agreement by providing Consultant notice of the term change without the consent of the Consultant. Consultant understands and agrees that the change in the term for performance of this Agreement could include a reduction and/or increase in the hours, price, or personnel requirements, as well as any other changes made by the Company. Amendment of the term and accompanying modifications under this Article shall not constitute a breach of this Agreement.

## ARTICLE V. COMPENSATION.

Consultant shall be compensated for Services at a fixed rate as set forth in Schedule B & C to be paid in installments to begin Service, upon successful delivery of Service deliverables, and complete Service. Payment for Services shall not exceed the total amount specified. Travel costs are not included. However, if required, travel will only be authorized if approved by the Company in writing. Before payment can be made, Consultant must submit invoices to the Company for Services performed. Invoices shall include copies of any and all receipts. Unless otherwise specified, the total invoice is all inclusive and no other monies will be paid to Consultant for compensation or reimbursement of other direct expenses.

Consultant shall adhere to the payment instructions and payment schedule outlined in Schedule B and the instructions for submission of invoices in this Section. Consultant is specifically cautioned that incorrect or incomplete invoices will delay payment.

Upon receipt of a satisfactory invoice and documentation, Company shall take all reasonable efforts to pay the invoice electronically within thirty (30) business days after receipt of payment from the Grant Provider for such Services, provided that any withholding, retainer or holdback imposed on such payment to the Company for Consultant-provided Services shall in turn be imposed on Consultant by Company. The Consultant releases Company from all claims connected to payment for Services less than the amount invoiced for under this Section as a result of actions taken by the Grant Provider (federal government).

## ARTICLE VI. CONFIDENTIAL INFORMATION.

**A.**  The Parties may provide to one another information that is confidential ("**Confidential Information**"). Confidential Information shall be Limited to information clearly identified as confidential or proprietary and information as defined below.
"Confidential Information" shall mean any and all information which is possessed or developed by or for a Party and which relates to the Party's existing or potential business or technology, which information is generally not known to the public and includes, without limitation, the following: intellectual property and proprietary rights, including proprietary inventions and technology, patentable ideas, product and service developments, compositions, formulas, technical developments, technical and engineering data, research or test data and results, existing or proposed research and development, and information concerning the development or protection of any related copyrights, patents, or trade secrets, source code and software; business operations, including business plans, business strategies, business know-how and techniques, records, results of operations, pricing, employee or contractor compensation, grant strategies, grant financials, existing or potential grant contracts or applications, communications between a Party's employees and attorneys representing a Party, business projections, and terms of a Party's contracts; product or service information, including all related data, specifications, costs, pricing, plans, ideas, methods,

, partners, licensees, sales or marketing techniques or strategies, negotiation strategies, information generated for customer or client engagement, and costs; financial and accounting information, including information related to a Party's financial condition, revenue, liabilities, expenses, financial projections, investments, financial statements, reports, accounts receivables, and inventory; and information received by a Disclosing Party from others that the Disclosing Party has an obligation to treat confidential.

**B.** Confidential Information shall not include information which: (i) is or becomes part of the public domain through no act or omission of a Party; (ii) was in a Party's lawful possession prior to the disclosure and had not been obtained either directly or indirectly from the other Party; (iii) is lawfully disclosed to a Party by a third-party without restriction on disclosure; (iv) is independently developed by a Party; or (v) is disclosed by operation of law. In addition, a Party shall be entitled to disclose Confidential Information to the extent required  by law or judicial order, provided that prior written notice of such required disclosure is furnished to the Party which owns the Confidential Information subject to disclosure within five (5) days or as soon as practicable in order to afford the said Party an opportunity to seek a protective order.

**C.** While the Services are being performed and for a period of six (6) years after completion of Services or termination of this Agreement, whichever is the latter date, each Party shall hold all Confidential Information in confidence and have a duty to prevent disclosure of Confidential Information, except as required to be disclosed to fulfill the obligations of the Company Contract or by law or judicial order, and shall treat such Confidential Information with the same degree of care that it uses to protect its own confidential information, which shall be no less than a reasonable degree of care. Consultant shall use Company's Confidential Information solely for the purpose of providing the Services.

**D.** Upon request to do so or within ninety (90) days after the completion of Services and delivery of all files to the Company, the Consultant shall remove all Company Confidential Information and Company Intellectual Property as identified in Article XVII: INTELLECTUAL PROPERTY from its devices, hard drives, cloud backups, and possession, and any other place the information has been stored. Any hard copy notes shall be shredded and discarded in the proper manner after they are delivered to the Company. Both Parties shall take reasonable measures to ensure the safe delivery of Confidential Information and/or Property belonging to the other Party is returned prior to the destruction of said material. Any request to confirm removal of Confidential Information and Property under this Article shall be in writing and confirmation shall be provided within thirty (30) days of receipt of the request.


# ARTICLE VII. RELATIONSHIP OF THE PARTIES.


The Parties expressly agree that the relationship between the Parties shall be that of independent contractors and the relationship between them shall not be considered a partnership, joint venture, employer-employee, or principal-agent relationship. Neither Party shall have the power or authority to obligate, make any statements, representations, commitments of any kind, or to take any action, which shall be binding on the other Party, without the prior written consent of that Party. Consultant's employees will not be considered employees of Company within the meaning or the applications of any federal, state or local laws or regulations, including but not limited to, laws or regulations covering unemployment insurance, old age benefits, worker's compensation, industrial accident,  labor, taxes of any kind, or fringe benefit programs for the purpose of vacations, holidays, pension, group life insurance, accidental death, medical, hospitalization, and/or surgical benefits. Consultant's personnel who perform any part of the Services shall be under the employment, and ultimate control, management, and supervision of Consultant. Consultant shall have the sole responsibility for paying all such taxes and other amounts due under applicable laws and regulations, and all amounts due for fringe benefits, in respect to Consultant's employees. Consultant shall release, indemnify, defend, and hold Company harmless from any claims or liabilities, including attorney's fees and costs of litigation to the extent caused by or in connection to a breach of the above responsibilities in this Article by Consultant.

If for any reason a situation arises in which Consultant is communicating with the Company's Grant Provider (including their representatives), whether or not related to the Services being performed under this Agreement, Consultant shall not propose, solicit, approach, or otherwise   encourage Grant Provider to select Consultant for competing opportunities/placements and/or to place opportunities/placements directly with Consultant if such opportunities/placements fall within the scope of Company's Contract with the Grant Provider. Consultant shall inform the Company's CEO & Founder, Samia Bingham, promptly in the event of the occurrence of the above communications and if the Grant Provider approaches Consultant with an interest or intent of competing opportunities/placements or working directly with the Consultant to place or create opportunities/placements, regardless if such opportunities/placements are competing opportunities/placements.

## ARTICLE IX. STOP WORK ORDER.

- The Company may at any time be required to stop work due to any number of reasons that include a direct order to do so from Company's Grant Provider. In the event that Company issues a stop work order, it shall be in writing to Consultant, and require Consultant to stop all or any part of the work called for by this Agreement for a period not to exceed ninety (90) consecutive days after such order is delivered to Consultant, and for any further period to which the Parties may agree. Such order shall be specifically identified as a stop work order issued under this Article. Upon receipt of the order, Consultant shall immediately comply with its terms and take all reasonable steps to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage. Within a period of ninety (90) consecutive days after a stop work order is delivered to Consultant, or within any extension of that period to which the Parties have agreed, Company shall either: (i) cancel the stop work order; or (ii) terminate the work covered by the order, as provided in Article X: TERMINATION of this Agreement. For purposes of calculating the ninety (90) days, the day and time of issuance of the stop work order and the proceeding twenty-four (24) hours shall count as one (1) day.

- If a stop work order issued under this Article is canceled or the period of the order or any extension expires, Consultant shall resume work. Company shall make an equitable adjustment in the Agreement delivery schedule or fee, or both, and the Agreement shall be modified, in writing, without the Consultant's consent, if: (i) the stop work order results in an increase in the time required for the performance of any part of   this Agreement; (ii) the stop order results in travel costs associated with the return of an employee on authorized travel who is essential and irreplaceable for the performance of any part of   this Agreement; and (iii) Consultant asserts its right to the adjustment within thirty (30) days after the end of the period of work stoppage, provided that, if Company decides the facts justify the Consultant's request Company may, in its sole discretion, receive and act upon the claim submitted at any time before final payment under this Agreement.

## ARTICLE X. TERMINATION.

## A. Termination for Convenience.

1. Company may terminate this Agreement, in whole or part, for any reason at any time.
2. Consultant may terminate this Agreement, for any reason, within thirty (30) days of executing this Agreement contingent upon such termination is made prior to the performance of any Services and receipt of any deposit or payment for Services.
3. In the following circumstances, Company shall consider this Agreement automatically terminated by the Consultant, unless the Consultant submits a written statement within ten (10) days of any event listed below clearly stating their

capabilities to perform the Services and/or Identity a... Document action failed to ... the qualifications of any Personnel that will be assigned to particular tasks, that is satisfactory to and accepted by the Company:

- If at any time during the term of this Agreement, the Subject Matter Expert is officially declared incompetent or insane, becomes incapacitated or mentally impaired to the point that Consultant is incapable of performing its duties under this Agreement in the Company's sole judgment, is arrested for more than ten (10) days, or declared dead (collectively, the "**Event**"), then Consultant's and Subject Matter Expert's business partners, employees, legal spouse, successors in interest, estate executor, trustee, and representative shall all have a duty to notify the Company immediately upon the occurrence of any Event listed in this Subsection and no later than five (5) business days from the date of a terminating Event. Consultant's obligations to the Company do not cease upon the occurrence of an Event in this Subsection, including death. Therefore, any work performed and accompanying notes up until the Event is Company property and must be delivered to the Company within thirty (30) days; any deposit or monies for Services not performed prior to the Event must be returned within thirty (30) days to the Company in full; and the Company reserves the right to demand reimbursement plus interest for any costs incurred, including attorney and legal fees, to retrieve unearned monies after the thirty (30) days and perform the Services or find a suitable replacement for the Consultant. During the term of this Agreement, Consultant shall be responsible for leaving in plain sight a note of who to contact (the Company) and the deadline in the case of the occurrence an Event as listed above to comply with the terms of this Subsection.

4. The Terminating Party will provide written notification to the other Party identifying the reason for termination at least ten (10) days before the termination date, except where stated otherwise.

- If Company has submitted payment electronically or Consultant receives payment within the ten (10) day period, both Parties shall take all reasonable measures to stop the transfer, reverse the transfer, or Consultant shall promptly return the full payment amount to Company without subtracting any transfer or transactions fees by no later than five (5) business days from the day of receipt, or as soon as reasonably possible under the circumstances.

5. Upon receiving Company's notice of termination, Consultant will immediately cease all work being performed under the affected scope of work issued, unless instructed otherwise by Company, and submit all work to the Company. The Company will only be liable for amounts due up to the date of termination in accordance with the provisions of this Agreement.

## B. Termination for Cause.

1. The Company may terminate this Agreement for cause, in whole or in part, at any time for the following reasons:

- **Failure to Cure:** If Consultant breaches, violates, or defaults on any of the terms of this Agreement and fails to cure the breach within five (5) business days of written notice, Company may immediately terminate this Agreement;
- **Performance**: Consultant and/or any of their personnel provides un acceptable and/or untimely Services to Company or Services of less than high quality;
- **Deliverables**: Consultant submits poor quality, unacceptable or untimely deliverables to the Company;
- **Communication**: Consultant contacts or initiates communications with the Grant Provider regarding Services covered under this Agreement without advance written approval from the Company;
- **Unauthorized Assignment:** Consultant engages another Company, business, or individual that has not been approved by the Company to provide Services, in whole or part, or develop any portion of the Intellectual Property that prevents absolute transfer, assignment, and ownership of the Intellectual Property to or by Company;
- **Key Personnel**: Consultant changes key personnel or other personnel ("**Personnel**") without prior written approval from Company. Company is not granted the ability to approve or request removal of any Personnel per

Cause of this Agreement Company is prevented from exercising its right to reject any of the Services on
170

interview, resume or other sources/reasons;

- **Reporting**: Consultant fails to submit acceptable and timely monthly reports to Company on or before the last day of each month, which shall meet Company expectation with details of all tasks and activities completed within that month; and
- **Security**: Consultant and/or any of their Personnel fail to meet Company security requirements and/or breaches any security regulation or policy of Company as outlined in Schedule A and F, and Exhibit A.

2. By written notice to Consultant, Company may immediately terminate for cause all or any portion of the Services covered by this Agreement in any of the following circumstances:

- If, after ten (10) days following notification by Company, Consultant fails to fulfill its obligations, or fails to make progress as to endanger performance of Services under this Agreement in the sole judgment of Company;
- If Consultant is adjudged insolvent or bankrupt, or upon the institution of any             proceedings by or against Consultant seeking relief, reorganization, or arrangement under any laws relating to insolvency, or upon any assignment for the benefit of creditors, or upon the appointment of a receiver, liquidator or trustee of any of Consultant's property or assets, or upon liquidation, dissolution or winding up of Consultant's business; or
- If Consultant commits any act which constitutes a default on the part of the   Company under its Company Contract, which may include but is not limited to the following: poor quality work product; delivery of unapproved work/Services; delivery of subpar Services; unprofessional conduct and communications; missed deadlines; disclosure of any intellectual property created or used during the performance of Services; disclosure of Company's Confidential Information or intellectual property; intellectual property fraud, theft, misappropriation, or infringement; and poor and deceptive business practices such as lying, embezzlement, fraud, theft, or falsifying invoices, reports, information or any documentation submitted or provided to Company under this Agreement.

3. Consultant may terminate for cause if the Company breaches, violates, or defaults on any of the terms of this Agreement and     fails to cure the breach within twenty (20) business days of written notice. Consultant may terminate this Agreement, unless such breach, violation, or default is not the fault of the Company, but the Grant Provider.

# C. Effects of Termination

1. In the event of such termination for cause, and with respect to the Services so terminated, Consultant shall be entitled to compensation in accordance with Article III: SCOPE OF SERVICES for Services actually and satisfactorily performed prior to the effective date of termination, and for which Company receives compensation from the Grant Provider. Consultant shall reimburse the Company, without delay, any monies paid to Consultant that are deemed unearned for any reason as outlined under this Agreement. Such payment shall be reimbursed in the full amount without subtraction of any bank, transfer or transaction fees.
2. In the event Company terminates all or any portion of the Services for cause, Company may procure, upon such terms and in such manner as it may deem appropriate, Services similar   to those terminated, and Consultant shall be liable to Company for any excess costs for such similar   Services, provided, however, that Consultant shall continue performance of the Services to the extent not terminated.
3. Upon receipt of any termination notice, Consultant shall immediately discontinue performance with respect to the terminated portion of the Services, except as necessary to protect and to preserve data and materials in the possession or control of Consultant in which Company and/or Consultant has an interest.
4. Upon any termination or expiration of this Agreement or with respect to any   Services, Consultant shall deliver to Company all Consultant work product in process and completed, all drafts, and other materials developed in connection with the terminated Services as well as all intellectual property licensed and shall perform such other acts to the extent requested, that would be required of Company under the Company Contract in connection with a corresponding termination or expiration of Services and/or the Company Contract.

## ARTICLE XI. DELAYS.

**A. Consultant Delays.**

1. In the event that Consultant expects that one of its obligations under this Agreement cannot be performed in a timely fashion or in accordance with any performance schedule set forth in Schedule A, Consultant shall provide written notice to Company immediately. Notice shall include all information known to Consultant relating to such delay and the date upon which Consultant expects to complete performance. Such notice shall in no way constitute an excuse of non-performance or a waiver by Company. In the event Company has reason to believe that Consultant may be unable to successfully or timely perform any of the Services, Company may request that Consultant provide Company with adequate assurance that Consultant will properly perform such obligations. If Consultant is unable or fails to provide such assurance within a reasonable time, then Company may perform the Services in lieu of the Consultant and deduct the cost of Company's substitute performance from the amount that would otherwise be payable to Consultant.

**B. Company Delays.**

1. If the performance of all or any part of the Services under this Agreement is delayed or interrupted (i) by an act of Company in the administration of this Agreement that is not authorized by this Agreement, whether implied or expressed, or (ii) by a failure of Company to act within the time specified in this Agreement, or within a reasonable time if not specified, then:

- an adjustment shall be made in the performance schedule and any other contractual term or condition affected by the delay or interruption, and the Agreement shall be modified, in writing, accordingly without written consent of the Consultant; HOWEVER,
- no adjustment shall be made under Section B of this Article for any delay or interruption to the extent that performance would have been delayed or interrupted by any other cause, including the fault or negligence of Consultant, or for which an adjustment is provided or excluded under any other term or condition of this Agreement.

2. A claim under this Article shall not be allowed for any costs incurred more than twenty (20) days before Consultant notifies Company in writing of the act or failure to act involved. Any claim under this Article shall be prohibited if the amount of costs incurred is not clearly stated along with the assertion of facts and supporting evidence of the alleged act or failure to act by Company,  which must be in writing and delivered within twenty (20) days after the termination of the delay or interruption, or as soon as practicable if circumstances under this Agreement frustrate Consultant's ability to send notice of the claim within the prescribed time frame.

**C. Force Majeure: Excusable Delays of Either Party.**

1. Neither Party to this Agreement shall be liable or deemed to be in breach or default for any delay or failure in performance under this Agreement or interruption of Services resulting directly or indirectly from acts of God; government orders or actions; wars; civil or military disturbances; terrorism; strikes; epidemics or pandemics; fires; floods; earthquakes; tornadoes; accidents; explosions; labor disputes; loss or interruption of electrical power or other public utility; freight embargoes or delays in transportation; or any similar or dissimilar cause beyond a Party's reasonable control. A Force Majeure event does not include an act of negligence or intentional wrongdoing by a Party. A Party claiming a Force Majeure event shall use reasonable diligence to mitigate the effects of or remove the condition that prevents or delays performance. They shall also use reasonable diligence to reduce the duration of non-performance due to the Force Majeure event in order to resume full performance. Any Party suffering a Force Majeure event ("**Affected Party**") shall notify the other Party ("**Non-Affected Party**") in writing immediately or within twenty-four (24) hours as soon as reasonably possible specifying the cause of the event, the services impacted, and a good faith estimate of the duration and/or required time to restore full performance. If the Force Majeure event continues for more than thirty (30)

days from the date of this Notice. The Non-Affected Party shall have the right to terminate this Agreement without penalty.

172

## ARTICLE XII. REPRESENTATIONS AND WARRANTIES.

A. Consultant hereby represents and warrants that any and all Services will be performed in a professional manner, by qualified personnel, and that all such work shall be free of errors and defects. Errors and defects include any error, omission, or misinformation that Consultant would deliberately or unintentionally share through the Program, content, materials, and/or behavior, or fail to correct.

B. Consultant represents and warrants that all work product, intellectual property, and Services under this Agreement shall be produced from the sole efforts of Consultant and approved key personnel, and Consultant has not and will not use the work product or intellectual property of another individual, organization, agency, and/or business in the Services for Company, except when permitted to do so under an appropriate license or permission which shall only be incorporated to compliment and not substantially comprise Consultant's work product, intellectual property, and Services under this Agreement. Consultant promises they have not and will not steal or borrow work product and/or intellectual property from another or attempt to deliver and represent said work product and intellectual property as their own to the Company.

C. Submission of invoices or proof of work performed to Company is Consultant's representation and warranty that Services have been completed, as indicated on the invoice, by Consultant. Consultant further agrees that, in the event of any error, defect, or omission, Consultant shall immediately correct such error, defect, or omission or non-conformance at no additional cost to Company. This remedy is in addition to any and all other remedies which Company may have pursuant to this Agreement or otherwise available under law.

## ARTICLE XIII. LIMITED LIABILITY.

Neither Party shall be liable, for any reason, for loss of profits or business opportunities, consequential, incidental, special or indirect damages, regardless of whether the other Party has been advised of or is aware that such damages have occurred or may occur.

## ARTICLE XIV. INSURANCE.

A. When applicable, unless excused by the Company, the Consultant shall acquire and maintain during the entire period of performance of this Agreement and at Consultant's own expense, insurance of at least the following with minimum coverage amounts as set forth below:

1. Workers' Compensation and Employer's Liability Insurance in accordance with the amounts specified by the laws of the states in which the work is to be performed under this Agreement. In absence of such state laws, an amount of $1,000,000 shall be required and maintained.
2. General Liability Insurance including bodily injury liability in the minimum amount of $500,000 per incurrence or adequate Professional Errors and Omissions (Professional Liability) coverage.

B. When required, Certificates or proof of Insurance shall be furnished to Company within ten (10) days of the execution of this Agreement, and from time to time upon reasonable request. Consultant, when applicable or upon request, shall identify Company as an additional insured under the policies of insurance in Subsection A.1. and A.2. above.

## ARTICLE XV. INDEMNIFICATION.

A. Consultant, at their own expense, shall indemnify, defend and hold harmless the Company, its officers, directors, employees, agents, affiliates, and assigns from and against any claim of infringement of any patent, trademark, or copyright or misappropriation of a trade secret with respect to any software, source code, program, service and/or other materials (collectively, "**Work Product**") developed by Consultant under this Agreement. Should Work Product developed by Consultant under this Agreement become, or in Consultant's opinion be likely to become, the subject of a claim of infringement of a patent, trademark, or copyright or misappropriation of a trade secret, Consultant shall use its best efforts either to procure for Company the right to continue using the Work Product, or to replace or to modify Work Product to make it non-infringing or without misappropriation but operating with the same functionality, without additional compensation and without delay.

B. Consultant shall indemnify, defend and hold harmless Company and its officers, directors, employees, agents, affiliates, and assigns from any and all losses, damages, costs, liabilities and expenses (including reasonable attorney and legal fees), plus interest, to the extent they arise out of or in connection with any of the    following:

1. the death or bodily injury of any agent, employee, customer, business invitee, business visitor or other person, and the damage, loss, or destruction of any real or tangible personal property, either of which is caused directly by the negligence or intentional misconduct of Consultant, its employees, contractors, agents, or Consultant's guests;
2. any negligence or intentional misconduct by or on behalf of Consultant in the performance of this Agreement that causes Company to be obligated to indemnify, defend, and/or hold harmless its officers, directors, employees, agents, and assigns pursuant to   the Company Contract; and
3. any penalty and any payments demanded from, incurred by, and/or paid by Company resulting from false claims submitted by Consultant, or misrepresentation of fact or fraud by Consultant, under this Agreement.

C. Company shall notify the Consultant, in writing, of any allegations of a false claim, misrepresentation of fact, or fraud to which this indemnity applies within a reasonable time.

D. The Company shall indemnify the Consultant in the same manner and as is specified in Article XV: INDEMNIFICATION, Section B, for Company's negligence, willful misconduct, or material breach of the contract.

## ARTICLE XVI. TRADEMARK AND TRADE NAME.

This Agreement does not assign, transfer, or grant either Party any ownership rights or interest in the other   Party's trade name or trademarks.

## ARTICLE XVII. INTELLECTUAL PROPERTY.

A. All Intellectual Property and related materials, including but not limited to, moral rights, goodwill, applications for registrations or relevant registrations, and rights to any copyrights ("Intellectual Property") that is produced or developed under this Agreement is governed by the following terms, unless expressly modified in a separately executed agreement or stated otherwise in this Agreement.

B. Exclusive Rights.

1. Company shall have an exclusive Intellectual Property rights in any materials created or defined as Consultant under this Agreement and incorporated into the Program. Consultant immediately and automatically convey, transfers and assigns all right, title, and interest, as well as all moral rights and goodwill, in all materials, including but not limited to, content, photos/images, sound recordings, syllabus, outlines, workbooks, videos, live instructional videos, handouts, presentations, as well as the components or parts within the materials, source code, and software (collectively, the "Intellectual Property") delivered to the Company or used by the Consultant in developing the deliverables under this Agreement. The Intellectual Property shall immediately and automatically vest in and is assigned to the Company, without any separate payment or other consideration of any kind, now or in the future, and without expectation of future royalties or attribution or credit. The Consultant shall take all actions necessary to effect such vesting and assignment.

2. Consultant understands and agrees that all materials used, produced, developed, and/or delivered under this Agreement is for the sole exclusive use by the Company. Consultant is prohibited from use, display, publishing, reproducing, performing, selling, publicizing, sharing, copying, replicating, and/or creating derivative works of the Intellectual Property under this Agreement without the express written permission of Company. Consultant represents and warrants that all materials, including their components, as well as any source code or software provided to the Company shall be completely free of third-party claim of ownership. Consultant shall indemnify the Company against any and all claims of third-party ownership under this Subsection.

3. Consultant shall not file any application to own Intellectual Property or challenge the Company's application(s) in regards to Intellectual Property under this Article, in whole or in part, or for intellectual property that is included in or as a component of the Intellectual Property.

4. Nothing in this Article shall be construed to grant the Consultant a license to Intellectual Property.

5. Nothing in this Article shall be construed to grant to either Party the exclusive rights or ownership to each Party's respective business and brand names, logos, trademarks (register or unregistered), or any intellectual property, including but not limited to, copyrights owned by each Party that is not included in the Intellectual Property under this Agreement.

## C. Licenses.

1. Consultant grants a non-exclusive, irrevocable, transferrable, perpetual, worldwide, and royalty-free license to the Company to use, print, display, and publicize Consultant's name, likeness, sound, voice, and business and brand name, tagline, and slogan as well as any image, video, and recording of the Consultant (collectively, the "Image Rights") for: lawful purposes only; for the purposes of securing the absolute and complete Intellectual Property rights for all Program materials; marketing; advertising; and any lawful business purposes, along with securing copyrights. Company shall have no right to trademark or copyright (or in any other way secure the sole rights to) the Image Rights independent from Program Materials or the Intellectual Property as defined in this Agreement. Consultant waives all objections to Company's use of Image Rights that are within the scope of this license.

2. The Image Rights may be copyrighted, used and/or published individually or in conjunction with other photography, video works, and recordings, and in any medium (including without limitation, print publications, public broadcast, CD-ROM format) and for any lawful purpose, including without limitation, trade, exhibition, illustration, promotion, publicity, advertising and electronic publication by the Company, except where limited under this Article.

3. Consultant represents and warrants that (i) no other party has been granted an exclusive license for use with respect to the Image Rights, and (ii) no other party's authorization or consent is required with respect to the permission granted to the Company under this Agreement.

## D. Recordings by Third-Parties.

1. Prior to any recording by a third-party, Consultant shall obtain a written contract signed and dated by the authorized person(s) of any third-party and the Consultant that states Consultant owns the copyrights or is granted an unrestricted, transferrable, worldwide, perpetual, royalty-free, and non-exclusive right/license for commercial and non-commercial purposes of all photos, videos, and/or recordings ("Recordings") created by the

shall make every effort to ensure the proper assignment of ownership or license is obtained according to the terms of this Article and that no third-party name, logo, watermark, or any other identifier is embedded or displayed in the Recordings.

2. Upon the transfer and/or assignment of ownership of the Recordings from a third-party to Consultant, Consultant's right, title, and interest in the Recordings shall immediately and automatically vest in and is assigned to the Company, without any separate payment or other consideration of any kind, now or in the future, and without expectation of royalties, attribution, or credit. The Consultant agrees and is expressly conveys, transfers and assigns all right, title, and interest in the Recordings to Company, without additional consideration or royalties. Consultant shall take all actions necessary to effect such vesting and assignment of the Recordings in/to Company.

3. Upon the grant of a license to the Recordings from a third-party to Consultant, Consultant automatically grants an exclusive, irrevocable, transferrable, unrestricted, worldwide, perpetual, royalty-free sublicense for commercial and non-commercial purposes in the Recordings to the Company, without any separate payment or other consideration of any kind except what is provided in this Agreement, now or in the future, and without expectation of royalties, attribution, or credit. Consultant shall take all necessary actions to effect such grant of license/sublicense between Consultant and Company without delay.

4. Consultant grants Company a license to Image Rights in the Recordings according to Section C of this Article.

5. Consultant shall be solely responsible for any and all payments, royalties, and licensing fees incurred for or that are a byproduct of obtaining and maintaining such copyright assignment(s) or license(s) from a third-party.

6. Consultant shall indemnify, defend, and hold Company harmless, against any and all claims and lawsuits arising out of or in connection with the assignments and grants of licenses and sublicenses of the Recordings between a third-party and Consultant and the subsequent assignments and grants of licenses and sublicenses of the Recordings between Consultant and Company.

## E. Marketing Permission.

1. Consultant may wish to market their participation in the Program and their performance of Services. Prior to posting any marketing materials online or in print, or any other mediums of publicizing Consultant's participation in the Program or Services performed, Consultant must submit the materials as they will be used to the Company for approval. No marketing materials shall include substantial, confidential or proprietary information/contents of the Consultant's or Company's materials, presentation, or the Intellectual Property without the express written permission of the Company.

2. Company grants Consultant a non-exclusive, revocable, non-transferrable, non-assignable, worldwide, and royalty-free license to use the Company's logo as is and any testimonial, review, or feedback Company provides Consultant on Consultant's website, speaker sheet, in marketing and advertising materials, and for lawful business purposes. Consultant is prohibited from editing any testimonial, review, or feedback provided by the Company that alters the original intent and meaning of said testimonial, review, or feedback. Upon the written revocation or limitation of the license under this Article by Company, Consultant must remove all materials identified or comply with the limitations of the license within thirty (30) days of the notice of revocation or limitation.

## F. Representations and Warranties.

Consultant represents and warrants that: (i) all materials and Intellectual Property, including their components, as well as source code and software provided to Company is original and free from third-party claims of ownership and Consultant has obtained the appropriate licenses and licensing rights to use and confer such rights to Company for all non-original third-party intellectual property; (ii) Consultant has or will obtain all written and signed contracts of assignments of ownership and/or the prescribed licenses for all Recordings by third-parties; (iii) Consultant has or will obtain all written and signed contracts of assignments of ownership for all materials, work product, and intellectual

properly owned by Consultant and Consultant represents and warrants the above as a party; (iv) no other party has been granted an exclusive license with respect to the Intellectual Property, Image Rights, and Recordings; and (v) no other party's authorization or consent is required with respect to the rights and licenses granted to the Company under this Agreement.

## G. Covenant Not to Sue.

Consultant covenants not to sue Company regarding use of Intellectual Property for lawful purposes under this Agreement and that includes administrative claims before the U.S. Copyright Office and any legal action that would circumvent the licenses and assignments granted under this Agreement to prevent, restrict, or interfere with Company's lawful use of Company's Intellectual Property, as well as registration.

## H. Survival of Termination.

The assignments and licenses of any and all intellectual property and publicity rights under this Agreement shall survive the termination of this Agreement. Nothing shall act as a limitation, termination, or revocation of the rights assigned and granted to Company. Consultant expressly agrees to waive and release all claims against Company under this Article and covenant not to sue or pursue any claim, directly or indirectly, against Company under this Article concerning the intellectual property and publicity rights.

# ARTICLE XVIII. PERSONNEL.

Consultant is hired by Company to develop educational content specifically for the Program. Consultant shall not assign their duties to a third-party company, person, or unapproved workers. Consultant agrees to have any individual that works on the Program under this Agreement and "Key Personnel" sign a contract that states the named individual: "transfer and assign to Flavors, LLC all rights, interests, and title in the intellectual property including copyrights in the work created in connection to services provided under the Independent Contractor Agreement without additional payment already received for the work performed or other consideration of any kind, and without royalties, attribution, or credit." Consultant shall be responsible for providing payment to all individuals and Key Personnel performing all or part of the Services under this Agreement from Company's payment for Consultant's Services as consideration for the assignment of intellectual property rights to Company. Consultant shall take all necessary actions to effectuate such assignment and vesting of rights under this Article in Company.

Due to intellectual property concerns, the Consultant agrees not to divert any "Key Personnel" from performance without the prior   written consent of Company. In the event it becomes necessary to remove such personnel for reasons beyond the control of Consultant, Consultant shall deliver to Company, no later than fourteen (14) calendar days, advance written notice, which notice shall designate the name and qualifications of the proposed replacement, whose qualifications and capabilities shall be at least equal to those of the person being replaced, and a copy of the intellectual property assignment contract the released personnel signed with a list of all work they created. The Company reserves the right to approve or deny the replacement prior to performance of any services.

Consultant shall provide Company with a copy of all intellectual property assignment contracts signed by Consultant and applicable personnel under this Article upon delivery of said intellectual property.

# ARTICLE XIX. FEDERAL REGULATIONS AND OTHER APPLICABLE TERMS AND CONDITIONS.

A. Company must adhere to the Uniform Guidance, 2 C.F.R. Part 200, as well other terms and conditions under the Company Contract. As a Consultant for Company, you agree to adhere to the applicable regulations in the Uniform

Guidance terms and conditions set forth in Schedule D1 The Federal Union 25 and lease and conditions shall apply and be in full force and effect for the duration of this Agreement.

B. When applicable, Consultant shall be responsible for ensuring compliance by its employees, contractors, and agents with Section A of this Article.

# ARTICLE XX. GENERAL PROVISIONS.

A. Authorized Agent: The Parties represent and warrant that they are of legal age, of sound mind, and are the authorized agent with the legal authority and permission to enter this Agreement on behalf of the above stated Parties as of the date of the execution of this Agreement.

B. Notice: All notices shall be in writing and deemed to be given or made when delivered  by hand to an authorized agent; by express mail provided it has the ability to track delivery; registered or certified mail; or within three (3) days of being sent by email and received by the mail server of the recipient absent any delivery error notice. Notice shall be sent as follows:

| Company | Consultant |
|---|---|
| Flavors, LLC (dba Flavors)<br>Attn: Samia Bingham, Founder & CEO<br>Address:  6504 American Blvd. #105A<br>Hyattsville, Maryland 20782<br>Email: samia@whatsyourflavor.co | Homegrown By Chef Janelle<br>Attn: Janelle Pitterson<br>Address:   30 Wall Street, 8th Floor<br>New York, NY 10005<br><br>Email:janelle@homegrownbyjanelle.com |

C. Headings: The headings set forth in this Agreement are for the convenience of the Parties, and in no way define, limit, or describe the scope or intent of this Agreement and shall be given no legal affect.

D. Days: All reference to days in this Agreement shall mean calendar days, unless otherwise specified.

E. Schedules and Exhibits: Any and all Schedules and Exhibits attached or referenced in this Agreement are incorporated into and considered to be part of this Agreement.

F. Amendments and Modifications: Except with respect to Articles IV: TERM, Article IX: STOP WORK ORDER, and Article XI: DELAY, this Agreement cannot be modified, changed or amended, except in writing signed by a duly authorized representative of each of the Parties.

G. Assignment and Delegation: Neither Party shall assign or delegate any of its rights, duties, or obligations under this Agreement to any other person and/or entity without prior express written approval of the other Party. Any attempt at such an assignment or delegation without prior written approval of Company shall be null and void for all purposes. This Agreement shall inure to the benefit of and be binding upon the successors, heirs, legal representatives, and assignees of the Parties.

H. Conflict: In the event of any conflict or inconsistency between the terms of this Agreement, the incorporated terms of the Company Contract shall govern. In the event of any conflict or inconsistency between the terms of the body of this Agreement and any Schedule or Exhibit of this Agreement, this Agreement shall govern.

I. Waiver: No waiver shall be deemed to have been made by either Party unless expressed in writing and signed by the waiving Party. The failure of either Party to insist on any one or more instances upon strict performance of any of the terms or provisions of this Agreement, or to exercise any   option or election contained herein, shall not be construed as a waiver or relinquishment of the right to enforce such terms, provisions, or election, but the same shall continue and remain in full force and effect, and no waiver by any Party of any one or more of its rights or remedies under this Agreement shall be deemed to be a waiver of any prior or subsequent rights or remedy provided here or at law, unless otherwise stated in this Agreement. All remedies afforded in this Agreement shall be taken and

govern, except where waiver provisions have been established elsewhere in this Agreement.

<u>J. Dispute Resolution</u>: Any dispute between the Parties and not based upon  Company action or inaction under the Company Contract shall be resolved as follows:

1. The Parties will attempt in good faith to resolve any controversy or claim(s)  arising out of or relating to this Agreement through discussions between the authorized representatives or designees of the Parties. If the discussions are unsuccessful, the Parties agree that any action asserting a claim by one Party against the other must be brought in the state or federal court with appropriate jurisdiction in Prince George's County, Maryland, unless jurisdiction is prescribed elsewhere in this Agreement or dictated by Company Contract or federal law.
2. If any legal action is pending on any claims between the Parties, any claim which could be brought as a counterclaim must be brought in the pending action, if at all.
3. The Parties agree to waive any right to a jury trial that either Party might otherwise have in any and all courts.
4. The Parties acknowledge that the breach of any provision or article of this Agreement relating to confidentiality or rights to intellectual property by one Party will give rise to irreparable injury to the other Party which is not adequately compensable in damages or at law. Accordingly, the Parties agree that injunctive relief will be an appropriate remedy to prevent violation of either Party's respective rights and/or obligations under those provisions, provided that nothing in this general prohibition shall limit a Party's right to any other remedies in equity or at law, including the recovery of damages and legal and attorney fees.
5. Any dispute that Consultant has based upon Company action or inaction under the Company Contract shall be resolved as follows:

- Consultant shall submit such claim to Company. In the event that Consultant's claim has a value of $100,000 or more, Consultant shall submit with such claim a certification in the form and manner required under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq*.;
- Company may sponsor such claim with Consultant's bearing the sole cost and expense, or shall timely notify Consultant, in writing, that it chooses not to sponsor such claim, in which event, the dispute shall be resolved in accordance with Section J.1., above. However, if Company sponsors such claim and suffers any loss or damages whatsoever, Consultant shall, without further proceedings or adjudication, reimburse Company for any and all losses, damages, costs and fees, notwithstanding any payment provision to the contrary;
- If the claim is sponsored by the Company and a final decision is issued  by Company under the "Disputes" clause of the Company Contract, and the decision relates to or affects the Agreement, then Company shall transmit a copy of that decision to Consultant within ten (10) days after its receipt by Company. Consultant shall notify Company as to whether Consultant would like Company to sponsor an appeal of the decision to an appropriate agency board of contract appeals or the United States Court of Federal Claims. In no event shall such decision be transmitted to Company more than five (5) days after Consultant's receipt of the decision. Any such appeal will be at Consultant's sole cost and expense;
- If any administrative or judicial appeal or lawsuit is taken at Consultant's request, which relates to or affects this Agreement, Consultant shall have the right to participate in the prosecution of the appeal or lawsuit, including the preparation of pleadings, introduction of evidence and presentation of arguments. In any administrative or judicial appeal or lawsuit taken or brought by Consultant, upon Company's election not to do so, Company shall, in good faith and in every reasonable manner, assist Consultant. Consultant will bear all costs and expenses incurred in prosecuting any appeal or lawsuit taken or brought solely at Consultant's request; and
- If a decision by an Officer of the Grant Provider (federal government), board of contract appeals, or court relating to the Company Contract becomes binding on Company by reason of the exhaustion of all administrative remedies or by reason of the failure to timely seek judicial relief or review in accordance with these provisions, and such decision relates to or affects this Agreement, then such decision shall also be binding, final, and conclusive on Company and Consultant under this Agreement.

6. The rights and obligations in Section I shall survive the termination of this Agreement.

Case 8:25-cv-01030-LKG   Document 1   Filed 20/03/25   Page 33 of 65   179

J. Survival: The following terms and conditions, as mentioned elsewhere in this Agreement, shall survive the termination of this Agreement: Articles VI: CONFIDENTIAL INFORMATION; X: TERMINATION; XII: REPRESENTATIONS AND WARRANTIES; XIII: LIMITATION OF LIABILITY; XV: INDEMNIFICATION; XVI: TRADEMARK AND TRADENAME; XVII: INTELLECTUAL PROPERTY; XIX: FEDERAL REGULATIONS AND OTHER APPLICABLE TERMS AND CONDITIONS; and XX: GENERAL PROVISIONS.

K. Communications and Contracting with the Company: The Company shall be responsible for communications with the Consultant relating to the Company Contract and this Agreement. The Consultant may communicate directly with the Company for Technical Direction only and shall coordinate the same with the Company's Program/Project Manager. The Consultant shall not discuss other aspects of this Agreement unless authorized in writing by the Company. Consultant shall not assign any portion of their rights, duties, or obligations under this Agreement to a third-party nor shall Consultant, directly or indirectly, contract with a third-party company other than Company to perform Services under this Agreement.

L. Laws: Consultant shall comply with all applicable federal, state, county, local, and provincial laws, ordinances, regulations, and codes in the performance of Services, including the procurement of any necessary permits and licenses.

M. Governing Law: This Agreement shall be construed, interpreted, and governed by the Federal common law of contracts, as enunciated and applied by Federal judicial bodies,    boards of contract appeals, and quasi-judicial agencies of the Federal government. To the extent the Federal common law of contracts is not dispositive, the laws of the State of Maryland shall govern, without respect to conflict of law principles.

N. Severability: If any provision of this Agreement is found to be void, invalid, or otherwise unenforceable, in whole or part, the remaining provisions of this Agreement shall remain in full effect without the void, invalid, or unenforceable provision.

O. Non-Solicitation: During the term of this Agreement and for one (1) year after the conclusion of this Agreement, neither party shall solicit or hire any current or former employees of the other party who have been directly involved in the activities and work covered by this Agreement during the previous twelve (12) months, without the written approval of the other Party. This shall not apply to situations where the employee applies for a position from a public announcement with the Company or Consultant.

P. Entire Agreement: This Agreement, together with all Exhibits and Schedules incorporated by reference, constitutes the entire and sole agreement between the Parties with respect to the subject matter and supersedes any prior agreements, negotiations, understandings, or other matters, whether oral or written, with respect to the subject matter of this Agreement.

IN WITNESS WHEREOF, the Parties, by their duly authorized agents, have read and agree to the terms of this Agreement and have had the opportunity to seek legal counsel, regardless of whether legal counsel was sought, with the expressed intent that this Agreement shall become effective upon the date of the last affixed signature ("**Effective Date**") below.

Founder & CEO Flavors, LLC.

Samia                               Bingham

**Signature**

*Samia Bingham*

Digitally signed by Samia Bingham

**Date and time:** 5/7/2024, 7:30:28 PM EDT

**IP address:** 173.73.249.239

Owner Homegrown By Chef Janelle

I agree to the terms and conditions of this contract.

Janelle                             Pitterson

**Signature**

*Janelle Pitterson*

Digitally signed by Janelle Pitterson

**IP address:** 69.114.42.72

EIN or SSN if an individual*



# SCHEDULES & EXHIBITS

**SCHEDULES & EXHIBITS**

**LIST OF SCHEDULES**

| Schedule | Description | Number of Pages |
|:---:|:---|:---:|
| A | Description of Services and Other Consulting Requirements | 2 |
| B | Payment Instructions and Schedule for Services | 1 |
| C | Security Policy | 1 |
| D | Grant Regulations & Policies | 1 |
| E | Invoice Template | 2 |
| F | Reporting Template | 2 |
| G | Additional Terms | TBD |

**LIST OF EXHIBITS**

| Exhibit | Description | Number of Pages |
|:---:|:---:|:---:|
| A | Quality Control Plan | 1 |

# Schedule A

**SCHEDULE A**

**[SEE ATTACHED PROPOSAL, <u>DATED 08 MAY 2024</u>, SUBMITTED IN RESPONSE TO RFP]**

JP _____ *

# Schedule B

# Payment Instructions and Payment for Serv

Consultant shall submit an invoice to Company on a monthly basis. Monthly report must accompany each invoice to be cons
unless it is approved by the Company and has all of the required information.

1. Enter invoice into Bill.com
2. See Invoicing terms in Article VI(B)
3. Invoices subject to the approval of the Company.
4. Submit invoices via BILL.COM.   Invoices will be reviewed and approved from Bill.com.
5. Invoices should detail services performed, deliverables delivered, and work in progress in accordance with Schedule

**INVOICE REQUIREMENTS:**
1. Service Provider's Name
2. Company Name
3. Address
4. Point of Contact Name
5. Email
6. Phone Number
7. Reference to your specific Contract Number <mark>**"Flavors-23-035"** and **"Culinary Advisor & Instructor"**</mark>
8. Total Fee
9. Invoice details which shall reflect a description of Services performed (tasks completed) and/or monthly activity along

**PAYMENT INSTRUCTIONS:**

- Submit invoice to Company for payment.

**All Payments will be made Net30 upon the receipt of the monthly report and invoice by consultant and approval by the Agreement.**

# Payment for Services

Service Provider shall detail the required payment terms for Company to follow

Consultant shall be paid according to the following payment terms:

**Total Payment for Cohort I: <mark>$8,500.00</mark>**

| Services Delivered For Cohort II | PRICE | |
|---|---|---|
| Host Nine (9), One (1-Hour) Interview Sessions with Program Instructors . Develop questions relative to building a professional food and beverage business brand. | $ | |
| One (1) In-Person 1-hour Course Opening Speech with Details Regarding Field Trip for Cohort II at Flavors in Hyattsville. Continental Breakfast and Lunch Provided | $ | |
| Five (5), One (1) Hour Virtual Office Hours- Live StreamYard Q&A with participants for Cohort II | $ | |
| NYC Food Hall Tour & Instruction for Cohort II | $ | |
| Graduation Planning & Host + 30-minute Closing Keynote Speech | $ | |
| Cohort II Final Reporting and Close-out Meeting with Flavors Team | $ | |
| Written Feedback on student participants coursework within 14 days of submission (via email or video recording) | $ | |
| | | |
| **SubTotal: Cohort II:** | **$8,500.00** | |
| | | |
| Host Nine (9), One (1-Hour) Interview Sessions with Program Instructors | $ | **TBD** |
| One (1) In-Person 1-hour Course Opening Speech with Details Regarding Field Trip for Cohort II at Flavors in Hyattsville. Continental Breakfast and Lunch Provided | $ | **TBD** |

| Co-Packing Facility Tour & Instruction for Cohort II: TBD | $ | TBD |
| Graduation Planning & Host + 30-minute Closing Keynote Speech | $ | TBD |
| Cohort II Final Reporting and Close-out Meeting with Flavors Team | $ | TBD |
| Written Feedback on student participants coursework within 14 days of submission (via email or video recording) | $ | TBD |
| | | |
| | | |
| **SubTotal: Cohort III** | $ | TBD |
| | | |

## Payment Terms (please include the deposit amount and remaining payment schedule):

The following payment schedule will apply for the contract term from May 18, 2024, to June 19, 2024, covering the deliver includes preparation for the program kickoff in week one, conducting and preparing for multiple virtual Q&A sessions, and involve significant study, preparation, and direct engagement with students. Each session is expected to last approximately

Deliverables:
- In-Person Engagement:Active participation at the Flavors Networking events in Washington, D.C., and at graduation even
-Presentations: conducting special presentation in New York.
- Virtual Sessions: Conducting and preparing for virtual Q&A sessions and other virtual engagements with students.

1. Deposit: A deposit of 50% is required to secure the services outlined in this contract. This deposit must be received by preparation time for the kickoff and subsequent sessions.

2. Final Payment:The remainder of the balance is due by June 19, 2024. This final installment will cover the continuation a services through the end of the contract period.

Please ensure that payments are made according to the schedule above to facilitate a smooth execution of all planned ac

JP _____ *

# Schedule C

## SCHEDULE C

### Security Policy

Security Policy is being developed by Flavors E-Learning Platform Development Team. The Security Policy will be provided for review and signature before access to the E-Learning Platform is provided to the Consultant during the execution of duties under this Agreement.

JP _____ *

Schedule D

**SCHEDULE D**

Grant Regulations & Policies

**NOTE:** Flavors is a Federal Government Contractor; therefore, the below regulations and policies are listed below in accordance with the mandates of our end-users. Services and/or products procured through consultants will effectively be used to provide the required services required by the government customers we service. The policies listed below are added for compliance purposes with our government end-user.

**LFPP Resource Page**

**Code Of Federal Regulation 2 CFR 200**

**Federal Audit Clearinghouse**

**USDA General Terms & Conditions**

JP _____    *

Schedule E

**SCHEDULE E**
**Invoicing Template**

| | CONTRACTOR INVOICE | |
|---|---|---|
| **From:** | | **INVOICE**#: 001 |
| Vendor Name | | **DATE**: 03/06/2023 |
| Address | | |
| **TO** | | **FOR** Local Food Promotion Program |
| Flavors | | |
| 6504 American Boulevard, Suite105A | | |
| Hyattsville, MD 20782 | | |
| Phone: 301-806-9869 | | |
| **Description** | | **Amount** |
| # of Hours Billed (Hourly Rate) or Monthly Retainer for Services – Period of Performance Ex: 60 Hours of Administrative Support at $x/hour/Monthly Program Administrative Support Services ($xx/hr) – October - February Provide at least 3 bullet points describing activities completed during invoice period | | $0 |
| | | |

| **Total** | | **Total** = **$0** |
|---|---|---|

Make all checks payable to Company Name

Payment is due within 21 days.

If you have any questions concerning this invoice, contact vendor name and email address.

**Thank you for your business!**

JP                                                    *

# Schedule F

**SCHEDULE F**

**Reporting Template**

**Reporting Template**

| **Contractor Name:** | | **Date**: |
|---|---|---|
| **Services Description** | | |
| **Total Hours Worked** | | |
| **Program Reporting Period:** | | |

1. Please describe your outcomes, goals, or objectives achieved during this reporting period.
2. How do these activities contribute to the success of the Flavors Technical Incubator.
3. Share a success story that illustrates the impact your activities have made on the program during this reporting period.
4. Have there been any challenges, lessons learned, or obstacles that have prevented you from achieving your desired outcomes/results this reporting period? If so, what have you/will you do to overcome those barriers?
5. Share any other relevant information, news, events, awards, or activities you wish to highlight with respect to the services provided during this reporting period.

Approved:

_____

Name

_____

Signature

_____

Email Address

Telephone Number

JP _____ *

# Schedule G

**SCHEDULE G**

**Additional Terms**

RESERVED

JP _____ *

# Exhibit A

**EXHIBIT A**

**Quality Control Plan**

| Performance | High quality performance of services<br>Timely performance<br>Adherence to contract terms, deliverables, schedules, policies, and regulations |
|---|---|
| **Deliverables** | High quality submittal of written deliverables<br>Timely submission of deliverables<br>Adherence to contract terms, deliverables, schedules, policies, and regulations |
| **Communication** | Adherence to Company communication policy<br>Monthly Program Management Report adherence to quality, timeliness, and attention to detail |
| **Key Personnel** | Personnel challenges<br>Technical knowledge, skills, and ability<br>Communication with Flavors leadership<br>Adherence to contract terms and conditions |
| **Reporting** | High quality submittal of written reports<br>Timely submission of reports<br>Adherence to contract terms, deliverables, schedules, policies, and regulations |
| **Security** | Adherence to Flavors policies and procedures<br>Organizational conflict of interest |

I agree to the terms and conditions of this contract.

Janelle                              Pitterson

**Signature**

Janelle Pitterson

Digitally signed by Janelle Pitterson

**Date and time:** 5/7/2024, 7:20:24 PM EDT

**IP address:** 69.114.42.72

# Sage Legal LLC

**18211 Jamaica Avenue ● Jamaica, NY 11423-2327 ● (718) 412-2421 ● emanuel@sagelegal.nyc**

October 17, 2025

**VIA FEDERAL EXPRESS**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Eric N. Vitaliano, U.S.D.J.
225 Cadman Plaza East
Courtroom 4C South
Brooklyn, NY 11201-1804

**VIA FEDERAL EXPRESS**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Cheryl M. Pollak, U.S.M.J.
225 Cadman Plaza East
Courtroom 13B South
Brooklyn, NY 11201-1804

> *Re:* **Pitterson v. Flavors LLC**
> **Case No.: 1:25-cv-03029 (ENV) (CLP)**

Dear Judge Vitaliano:

This office represents Plaintiff Janelle Pitterson ("Plaintiff") in the above-referenced case. Plaintiff respectfully submits this letter in accordance with this Court's Individual Motion Practice and Rules to provide the assigned magistrate judge with a courtesy copy of this cover letter and this honorable Court with both a courtesy copy of this letter together with the Plaintiff's memorandum of law[1] in opposition to Defendants' motion to dismiss.

Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Jamaica, New York
      October 17, 2025

Respectfully submitted,

**SAGE LEGAL LLC**

  */s/ Emanuel Kataev, Esq.*  
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Janelle Pitterson*

<u>VIA E-MAIL</u>
All counsel of record

---

[1] The memorandum of law served on Defendants was missing the date of service and tables of contents and authorities. Plaintiff corrected these deficiencies in the courtesy copy it submits to this Court and shall provide Defendants with a copy of the corrected memorandum, as well.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

------------------------------------------------------------X
JANELLE PITTERSON, on behalf of herself
and others similarly situated,                                  **Case No.:** 1:25-cv-3029 (ENV) (CLP)

                                Plaintiffs,

               -against-

FLAVORS LLC d/b/a THE CONTRACTS
LOUNGE, and SAMIA BINGHAM,

                        Defendants.
------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR DISMISSAL</u>**

**CONSUMER ATTORNEYS, PLLC**
Emanuel Kataev, Esq.
6829 Main Street
Flushing NY 11367-1305
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Plaintiff
Janelle Pitterson*

## PRELIMINARY STATEMENT

Plaintiffs JANELLE PITTERSON, on behalf of herself and others similarly situated (hereinafter "Plaintiff" or "Pitterson"), respectfully submits this Memorandum of Law in opposition to Defendants' FLAVORS LLC d/b/a THE CONTRACTS LOUNGE, and SAMIA BINGHAM's (hereinafter "Defendants") motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"). Plaintiffs argue that the forum-selection clause on which Defendants rely in their motion was not mandatory. In the event the Court agrees with Defendants that venue should have been brought in Prince George's County, Maryland, pursuant to 28 U.S.C. § 1404(a), Plaintiffs ask that the Court transfers this case, rather than grant Defendants' motion to dismiss.

Defendants' motion to dismiss for failure to state a claim must be denied in its entirety.

First, while the forum-selection clause in the independent consulting agreement ("Agreement") between Pitterson and Defendants may, on its face, be valid, selection of this forum is not mandatory. The Agreement reads, "the Parties agree that any action asserting a claim by one Party against the other must be brought in the state or federal court with appropriate jurisdiction in Prince George's County, Maryland, *unless jurisdiction is* prescribed elsewhere in this Agreement or *dictated by* Company Contract or *federal law*" (emphasis added). Pursuant to 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in […] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

Thus, enforcement of this forum-selection clause as Defendants construe it would be unreasonable and unjust, as it would deprive Plaintiff of the ability to compel the testimony of crucial witnesses of the wrongdoing which occurred in Kings County, New York.

Second, Plaintiffs maintain the allegations in their May 30, 2025 Complaint ("Compl."), including: (i) violation of the Fair Labor Standards Act ("FLSA") for unpaid wages and overtime pay; (ii) violation of the New York Labor Law ("NYLL") for failure to pay overtime; (iii) violation of the NYLL for failure to pay all wages owed; (iv) violations of the NYLL for failing to provide Notices of Pay Rate and Pay Day; (v) violations of the NYLL for inaccurate wage statements; (vi) violation of the Freelance Isn't Free Act ("FIFA") for failure to pay all compensation (brought in the alternative to Plaintiff's and the Class' claims under the FLSA and NYLL).

Finally, to the extent this Court finds that any claim should be dismissed, Plaintiff respectfully requests leave to replead, which should be freely granted as justice so requires.

## STATEMENT OF RELEVANT FACTS

In or around January 2024, Pitterson began working for Defendants. See Complaint, ECF Docket Entry 1, ¶ 10. Pitterson entered into an Agreement with Defendants in or around May 7, 2024. Id.; see also ECF Docket Entry 6-2, Exhibit ("Ex.") A. The signatory to every agreement between the parties on behalf of Pitterson was Pitterson. Id. Pitterson separated from employment with Defendants on or around May 2024. See Compl. ¶ 10. Her last known address on file with Defendants indicates that she resides in Kings County within the State of New York. See Id. ¶ 9. At all relevant times, Pitterson was employed to perform work on behalf of Defendants within the State of New York. Id. Brooklyn, New York is approximately two-hundred twenty-six (226) miles away from the courts in Prince George's County, Maryland. See MapQuest.[1] Pitterson's testimony and other witnesses in New York is crucial in this case; she has had numerous discussions with Defendants concerning the terms of the Agreement. See Compl. ¶¶ 21-24.

---

[1] See https://www.mapquest.com/directions/from/us/new-york/brooklyn-ny-282042076/to/us/maryland/prince-georges-county-465828742?scheduleType=leave-now (last accessed October 17, 2025).

Moreover, there exists documentary evidence in Pitterson's possession that establishes that Defendants did not comply with the Agreement, from early on when Defendants failed to compensate Pitterson accordingly. See ECF Docket Entry 6-2, Ex. A. Because many of Plaintiffs, including Pitterson, are no longer employed by Defendants, their testimony will have to be compelled, and this cannot be done if the case is transferred to Prince George's County, Maryland. See Compl. ¶ 10. In addition, Pitterson and other Plaintiffs similarly situated have secured employment elsewhere such that it is unlikely they will be able to travel to Maryland without being adversely impacted. If any of Defendants' witnesses would be burdened appearing in New York, Plaintiffs have no objection to virtual appearances for depositions and – with the Court's permission – at trial.

## STANDARD OF REVIEW[2]

District courts may transfer a civil action "[f]or the convenience of the parties and witnesses, in the interest of justice." See 28 U.S.C. § 1404(a); see also Semente v. Empire Healthchoice Assurance, Inc., No. 14-CIV.-5644 (JMF), 2014 WL 4967193, at *1 (S.D.N.Y. Sep. 29, 2014). "[T]he purpose of [this] section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation and quotation marks omitted).

On a motion to transfer, "the burden is on the movant to show that the transfer is justified — Absent a clear and convincing showing that the balance of convenience strongly favors the alternate forum ... discretionary transfers are not favored." See Xiu Feng Li v. Hock, 371 Fed. Appx. 171, 175 (2d Cir. 2010) (emphasis added).

---

[2] Plaintiff focuses on the standard for Defendant's motion to transfer, and does not dispute the well-accepted pleading standards set forth by Defendant concerning its Rule 12(b)(6) motion.

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." See In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992). When considering a motion to transfer, courts must "[f]irst ... determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court." See In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (internal citations omitted). Courts next consider: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006) (quotation omitted).

"Courts also routinely consider judicial economy, the interest of justice, and 'the comparative familiarity of each district with the governing law.'" See Stein v. Teekay Corp., No. 16-CIV.-00345, 2016 WL 10490287, at *1 (D. Conn. Nov. 18, 2016) (citing Synca Direct Inc. v. SCIL Animal Care Co., No. 15-CIV.-2332, 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015)). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (citations omitted).    To determine whether a forum selection clause is enforceable, the Court must ask: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive," i.e., whether the parties "are required to bring any dispute to the designated forum or simply permitted to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." See Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014).

"If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. A party may only overcome this presumption by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. To rebut a presumption that a forum selection clause is valid, a party must show that: (1) the forum selection clause's incorporation was the result of fraud or overreaching, (2) the law to be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, or (4) *trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court*. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC, 509 F. Supp. 3d 38 (S.D.N.Y. 2020) (emphasis added).

Regardless, a forum selection clause that is permissive is enforceable as such. "Forum selection clauses fall into two categories, mandatory and permissive. See Boss v. American Express Financial Advisors, Inc., 6 N.Y.3d 242 (2006). "[M]andatory forum selection clauses provide that the specified forum is the exclusive or sole forum in which the matter may be heard." See Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs. LLC, 43 Misc. 3d 1230(A), 993 N.Y.S.2d 647 (Sup. Ct., N.Y. Cty. 2013), aff'd sub *nom.* New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V., 145 A.D.3d 16, (1st Dept. 2016).

A permissive clause allows a party the option of suing either in the designated forum or "in another forum having jurisdiction over the defendants." See Walker, Truesdell at 5 (citing, e.g., Orix Credit Alliance, Inc. v. Mid–South Materials Corp., 816 F. Supp. 230 (S.D.N.Y. 1993); see also Spellmans Marine Inc. v. HC Composites L.L.C., 77 Misc. 3d 318 (N.Y. Sup. Ct. 2022).

A forum selection clause is unreasonable if, among other reasons, the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court" or enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, in this case New York. See Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum *non conveniens*." See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 60 (2013). In deciding a motion to dismiss based on a forum-selection clause, "a district court typically relies on pleadings and affidavits," unless disputed facts exist that would require an evidentiary hearing. See Martinez, 740 F.3d at 216-17 (2d Cir. 2014).

Where a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(3) based on a forum-selection clause, a court may "treat their motion as a motion to dismiss for forum *non conveniens*." See SingularDTV GmbH v. LeBeau, No. 21-CIV.-10130, 2022 WL 6771081, at *3 (S.D.N.Y. Oct. 11, 2022); see also Martinez, 740 F.3d at 214, 216 (affirming dismissal under forum *non conveniens* where the defendant moved under Rule 12(b)(3)); AMTO, LLC v. Bedford Asset Mgmt., LLC, 168 F. Supp. 3d 556, 563 n.8 (S.D.N.Y. 2016) (construing motion to enforce the forum-selection clause under Rule 12(b)(3) as proceeding under the *forum non conveniens* doctrine).

"The overriding framework governing the effect of forum selection clauses in federal courts ... is drawn from federal law." See Martinez, 740 F.3d at 217.

To determine whether to enforce a forum-selection clause, i.e., step four of the analysis, courts apply federal law. See Id.

# ARGUMENT

## I.    TRANSFERRING TO PRINCE GEORGE'S COUNTY, MARYLAND WOULD DEPRIVE PLAINTIFFS OF THEIR DAY IN COURT

Plaintiffs begin by respectfully reminding the Court that the forum selection clause is permissive, not mandatory, and as such is enforceable in any jurisdiction as dictated by federal law. See ECF Docket Entry 6-2, Ex. A; see also Spellmans.  Rule 45 generally prohibits a Court from issuing a subpoena that would compel a non-party witness to travel more than one hundred (100) miles. See Doe v. McAdam Fin. Group LLC, No. 22-CIV.-113 (SN), 2022 WL 3579700, at *11 (S.D.N.Y. Aug. 3, 2022), report and recommendation adopted, No. 1:22-CV-113 (GHW), 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022); see also EasyWeb Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012); Fed. R. Civ. P. 45(d)(3)(A)(ii).

"'The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.'" See Indian Harbor Ins. Co. v. NL Envtl. Mgt. Services, Inc., No. 12-CIV.-2045 (PGG), 2013 WL 1144800, at *10 (S.D.N.Y. Mar. 19, 2013) (citing Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (quoting Arrow Electronics v. Ducommun, Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989)).  "District courts have broad discretion in making determinations of convenience under [§] 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." See D.H. Blair & Co., 462 F.3d at 106.

Here, Pitterson and other employees of Defendants similarly situated to her reside and work more than two hundred (200) miles away from the courts in Prince George's County, Maryland. Further, as Plaintiffs similarly situated to Pitterson may not be responsive to attempts to contact them, it can be inferred that they would not willingly travel to Maryland, especially because they are likely currently working elsewhere and are unlikely to be able to travel to Maryland without being adversely impacted.

The court in Prince George's County, Maryland would therefore be prevented from subpoenaing Plaintiffs similarly situated to Pitterson, as well as non-party witnesses who have first-hand knowledge of key events related to this case. Absent this testimony, Plaintiffs would effectively be deprived of their day in court.

Thus, this Court should not exercise its discretion in favor of a transfer. See Defenshield Inc. v. First Choice Armor & Equip., No. 10-CIV.-1140, 2012 WL 1069088, at *13 (N.D.N.Y. Mar. 29, 2012) (finding that, because certain of its non-party witnesses are not subject to Rule 45 subpoena power in the Western District of North Carolina, this weighs against transfer). Notably, the witnesses Defendant may identify are likely employees of Defendants. As such, there should be no concern as to the ability to have these employees testify. See Defenshield Inc., 2012 WL 1069088, at *13 (noting that employees of the parties will be available in any venue by virtue of the employment relationship and thus a subpoena is not required under those circumstances).

Courts routinely engage in an analysis concerning the availability of non-party witnesses and whether they fall within the subpoena power to determine whether this important factor weights in favor or against transfer. In Enthone Inc. v. Moses Lake Industries, Inc., the court found that a single former employee identified as a critical witness would not be able to have his testimony compelled in the Eastern District of Washington ("EDWA"), but that the Rule 45 subpoena power would extend to him in the Northern District of New York ("NDNY"), where he resided. See No.: 1:13-CIV.-1054 (TJM) (RFT), 2014 WL 12587065, at *6–7 (N.D.N.Y. Apr. 10, 2014).

Even though the plaintiff failed there to establish that this and other witnesses have stated they would not appear voluntarily, the Court in Enthone nonetheless held that it could not ignore that the cost and inconvenience for these nonparty witnesses will be substantial. Id.

In balancing these arguments as to this factor, among others, the <u>Enthone</u> court denied the motion to transfer venue from the NDNY to the EDWA. <u>Id.</u>

In another case, <u>Bennett v. Sterling Planet, Inc.</u>, the court there engaged in a similar analysis:

> [I]t appears that multiple critical witnesses from multiple different companies would fall outside of the court's power to compel testimony *if the action was transferred*. However, *if the action remained in New York, [a party] would only have two individuals outside of the sphere of compelled testimony*, …. Accordingly, this factor weighs against transfer to Georgia.

<u>See</u> No. 09-CV-1176 (GLS) (DRH), 2010 WL 11566003, at *7–8 (N.D.N.Y. Mar. 22, 2010); <u>see also</u> <u>Computer Express Intern., Ltd., Digital Data Devices, Inc.</u>, No. 01-CIV.-4801, 2001 WL 1776162, at *9 (E.D.N.Y. Dec. 21, 2001) ("Thus, none of the non-party witnesses can be compelled to appear in Idaho either for a deposition or for trial in this matter, because each appears to reside more than 100 miles from Idaho. The non-party witnesses located in New York and New Jersey, however, can be so compelled. Accordingly, on balance, this factor slightly favors retaining the action in New York").

This Court should engage in the same analysis and exercise its discretion against transferring this case to Prince George's County, Maryland, where that court would have zero subpoena power over any non-party witnesses beyond the reach of the 100 miles from Prince George's County, Maryland. It bears emphasis that Defendant recognizes this as an important factor, and has not identified any non-party witnesses that cannot be compelled to testify in New York.

Indeed, because "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted," the inability to compel witnesses to appear in Prince George's County, Maryland is worthy of great weight. <u>See</u> <u>ESPN, Inc. v. Quiksilver, Inc.</u>, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (<u>quoting</u> <u>Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.</u>, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)).

For this analysis, the Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d at 404 (quotations omitted).

In this case, the materiality of witness testimony is great because they have first-hand knowledge of the events that transpired under Defendants' employ. Moreover, Plaintiffs are prepared to ease any burden Defendants would face in having its employees testify in the EDNY. For depositions, Plaintiffs agrees to conduct them remotely to the extent any witness would be burdened traveling to New York.   Similarly, and to the extent this Court permits it, Plaintiffs is amenable to having Defendants witnesses appear remotely to testify at trial.[3]

In addition, Defendants' arguments fail to address the locus of operative facts, which occurred in New York and is controlling on such a motion.

There was no contact by Plaintiff in Prince George's County, Maryland.  Meanwhile, Defendants routinely availed themselves of the State of New York in locating, marketing, and hiring Plaintiffs in the State of New York.[4] "In a contract case, the locus of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013).

---

[3] As set forth herein, these employees remain under the control of Defendants and can be compelled to testify in either forum; as such, the most central witness is [name], who cannot be compelled to appear in Prince George's County, Maryland.

[4] Many courts consider the *locus* of operative facts to be a "primary factor in determining a § 1404(a) motion." See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. St. Paul Fire & Marine Ins. Co., No. 12-CIV-1250 (PKC) (RCE), 2012 WL 1829589, at *4 (S.D.N.Y. May 11, 2012) (quoting Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F. Supp. 2d 523, 525- 36 (S.D.N.Y. 2003)). Courts interpret the *locus* of operative facts as "the place where events and actors material to proving liability are located." Id. (quoting Amardeep Garments Indus., Pvt. Ltd. v. Cathay Bank, No. 10-CIV.-2429 (BSJ), 2011 WL 1226255, at *3 (S.D.N.Y. Mar. 23, 2011)).

When determining the locus of operative fact under 28 U.S.C. § 1404, "a court may determine that there are several *loci* of operative facts." Id. (internal quotation marks omitted).

Here, the Agreement was executed in New York by Plaintiff, and the agreement provides that Plaintiff will conduct special presentations in New York. In that regard, any minimal contacts in Maryland – which Defendants do not address – are inconsequential given the fact that the parties utilized the internet and e-mail to conduct business together. See, e.g., Rossi v. Ferring Pharm., No. 3:15-CV-01367 (VLB), 2016 WL 593440, at *6 (D. Conn. Feb. 12, 2016) (*locus* of operative facts lied in the geographic area serviced by sales representative where the events leading to the termination occurred, not location of plaintiff's home office or the employer's headquarters); see also Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc., No. No. 00- CIV.-1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y. Sept. 13, 2000) ("Here, the allegation is that [the defendant] makes false statements and competes unfairly in selling its discount cards in this District via the internet and through businesses located here. The *locus* of operative facts is thus in this District, even if [the defendant's] principal place of business is elsewhere or [it] sells … elsewhere").

Finally, it bears mentioning that Defendants sought out Plaintiffs as employees and purposely availed itself of the State of New York to obtain employees there. Notably, every contract or agreement signed by Plaintiff was electronically signed, giving rise to the inference that Pitterson signed them "at home" in the State of New York. Thus, this Court should consider that Defendants availed themselves of this forum in making its determination. See Republic of Guatemala v. IC Power Asia Dev. Ltd., No. 1:22-CV-00394 (CM), 2022 WL 3139949, at *7 (S.D.N.Y. Aug. 5, 2022) (in analyzing personal jurisdiction, "ICPA purposefully availed itself of the privilege of doing business in New York by entering into a deal in New York – with more than one New York player, … – to acquire the Distributors").

12

Finally, there is one question that arises in reviewing the pleadings, declarations, and accompanying exhibits which gives rise to finding that the forum selection clause should not be enforced on the grounds of fraud or overreaching.  Specifically, Plaintiff alleges that she performed work for Defendants from January 2024 through May 2024.  However, the agreement presented by Defendants is dated May 7, 2024, towards the end of Plaintiff's employment with Defendants.  The temporal proximity of the execution of the agreement Defendants rely on falling towards the end of Plaintiff's employment relationship with Defendants raises a question which Plaintiff respectfully submits warrants an evidentiary hearing, as the agreement Defendants rely on should typically be executed at the beginning of the parties' working relationship.

For the foregoing reasons, while Plaintiffs do not argue that the forum-selection clause: (i) is invalid; (ii) was not reasonably communicated to Plaintiffs; or (iii) covers Plaintiff's claims, they do argue that it is not (iv) "mandatory," but rather, is permissive, and that this Court should exercise its discretion against granting the motion to transfer venue because the locus of operative facts falls in New York. Moreover, Plaintiffs respectfully submit that it has made a sufficiently strong showing that enforcing the forum selection clause would be unreasonable and unjust.

Accordingly, because transferring venue would effectively deprive Plaintiffs of their day in court by preventing them from having any subpoena power over any witnesses more than 100 miles away from Prince George's County, Maryland, and because Defendants do not suffer the same prejudice by remaining in the EDNY, this Court should decline to transfer venue.

## II.    THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MUST BE DENIED

Defendant also seeks dismissal of all Plaintiffs' claims, pursuant to Rule 12(b)(6), because the Eastern District of New York is well outside of the borders of Prince George's County, Maryland and, as such, is not a proper forum.

CPLR §§ 510 and 511(b) explain that transfers for improper venue are resolved through motion, not dismissal. This approach is supported by case law, demonstrating that Rule 12(b)(6) is not the proper method to address venue issues. See Cartwright v. Kennedy, 84 Misc. 3d 497, 220 N.Y.S.3d 599 (N.Y. Sup. Ct. 2024). See also Reliable Displays Corp. v. Maro Indus., Inc., 67 Misc. 2d 747, 325 N.Y.S.2d 616 (Sup. Ct. 1971); Towers v. Long Island Props., Inc., 67 Misc. 2d 1062, 325 N.Y.S.2d 605 (Civ. Ct. 1971). Rule 12(b)(6) is designed to address substantive deficiencies, not procedural and non-jurisdictional issues like improper venue. See Forte v. Long Island R.R., 143 Misc. 2d 663, 541 N.Y.S.2d 729 (Sup. Ct. 1989). See also Elie v. Marathon REO Mgmt., LLC, 119 A.D.3d 890, 891, 989 N.Y.S.2d 863 (2014) ("'Improper venue is not a jurisdictional defect requiring dismissal of the action' (Lowenbraun v. McKeon, 98 A.D.3d 655, 656, 950 N.Y.S.2d 381, quoting Chira v. Global Med. Review, 160 Misc.2d 368, 369, 609 N.Y.S.2d 511 [Sup.Ct., Rockland County] )").

## III.    LEAVE TO REPLEAD SHOULD BE GRANTED IF ANY CLAIM IS DISMISSED

In the event that dismissal is granted as to any claim(s), Plaintiff respectfully seeks leave to amend, which the Rules provide shall be freely given when justice so requires. See Fed. R. Civ. P. 15(a).

Indeed, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" See Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also Vacold LLC v. Cerami, No. 00-CIV.-4024 (AGS), 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016), aff'd, 710 Fed. Appx. 449 (2d Cir. 2017).

Moreover, "[w]ithout the benefit of a ruling [from the Court], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." See McKenzie-Morris v. V.P. Records Retail Outlet, Inc., No. 1:22-CIV.-1138 (GHW), 2022 WL 18027555, at *12 (S.D.N.Y. Dec. 30, 2022) (citing Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)).

Accordingly, leave to replead should be granted to the extent Defendants succeed on their motion to dismiss and any deficiencies are identified by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an Order denying Defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Should the Court agree with Defendants that venue should have been brought in Prince George's County, Maryland, pursuant to 28 U.S.C. § 1404(a), Plaintiffs ask that the Court transfers this case, rather than grant Defendants' motion to dismiss.

Dated:      Jamaica, New York
            October 17, 2025                    Respectfully submitted,

                                               **CONSUMER ATTORNEYS, PLLC**

                                               By:  /s/ Emanuel Kataev, Esq
                                               Emanuel Kataev, Esq.
                                               6829 Main Street
                                               Flushing NY 11367-1305
                                               (718) 412-2421 (office)
                                               (718) 489-4155 (facsimile)
                                               ekataev@consumerattorneys.com

                                               *Attorneys for Plaintiff*
                                               *Janelle Pitterson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

|  |  |
|---|---|
| JANELLE PITTERSON, on behalf of herself and others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>FLAVORS LLC d/b/a THE CONTRACTS LOUNGE, and SAMIA BINGHAM,<br><br>        Defendants. | Case No:  1:25-cv-3029 (ENV) (CLP)<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)** |

Date:  October 24, 2025

Respectfully submitted,

/s/ Roya Vasseghi
Roya Vasseghi (NY Bar No. 4960894)
VASSEGHI LAW GROUP
9663-D Main Street
Fairfax, VA 22031
(703) 215-5358 Tel.
(703) 563-7401 Fax
roya@vasseghilaw.com

Flavors, LLC d/b/a The Contracts Lounge ("Defendant Flavors") and Samia Bingham ("Defendant Bingham") (collectively "Defendants"), by and through undersigned counsel, respectfully submit this Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Under Rule 12(b)(6) ("Opposition"). Plaintiff Janelle Pitterson's ("Pitterson") opposition all but concedes that she has ignored the mandatory forum-selection clause in her independent contractor agreement with Defendant Flavors ("Agreement") and, instead, attempts to argue the merits of a transfer motion which is not currently before this Court. Because the Opposition does not rebut the presumption that the Agreement requiring Pitterson to bring the instant claims in Prince George's County, Maryland is enforceable, this Court should grant Defendants' motion to dismiss.

## DISCUSSION

**I.    The forum selection clause is mandatory and, therefore, presumptively enforceable.**

"The enforcement of valid forum–selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Fasano v. Guoqing Li*, 47 F.4th 91, 100–101 (2d Cir. 2022) (citing *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) (cleaned up)). "If the forum clause was communicated to the resisting party, has mandatory force, and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362–63 (2d Cir. 1993)).

Here, Pitterson and Defendant Flavors entered into the Agreement which contains the following forum-selection clause:

> The Parties will attempt in good faith to resolve any controversy or claim(s) arising out of or relating to this Agreement through discussions between the authorized representatives or designees of the Parties. If the discussions are unsuccessful, the Parties agree that any action asserting a claim by one Party against the other must be brought in the state or federal court with appropriate jurisdiction in Prince

1

George's County, Maryland, unless jurisdiction is prescribed elsewhere in this Agreement or dictated by Company Contract or federal law.

*See* Defendants' Memorandum in Support of 12(b)(6) Motion, Exh. A. (Article XX.J.1). And Pitterson concedes that this contractual language (i) was reasonably communicated, (ii) covers the claims of the instant dispute, and (iii) is binding. *See* Opposition at 2, 13. However, Pitterson contends that this forum-selection clause is permissive rather than mandatory. *See* Opposition at 2, 6, 8 and 13. This Court should reject this argument as the Agreement plainly and unambiguously states that "any controversy or claim(s) arising out of or relating to" the Agreement "must be brought" in Prince George's County, Maryland. Notably, Pitterson's opposition does not address the cases, cited in Defendants' supporting brief, which support a finding that this language is mandatory. Nor does Pitterson address the decisions that stand for the proposition that dismissal is warranted under Rule 12(b)(6) in these circumstances.

In arguing that the forum-selection clause is permissive, Pitterson cites 28 U.S.C. § 1391(b)(2), which states that a civil action *may* be brought in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and she notes that the parties agreed to litigate certain claims in other jurisdictions when federal law dictates. This nonsensical argument—that the *permissive language* in Section 1391(b)(2) renders the *mandatory language* of the Agreement's forum selection clause *permissive*—is without merit, insofar as it would render part of the Agreement meaningless. *See generally Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 957 F.3d 337, 344 (2d Cir. 2020) (explaining that courts in the Second Circuit "give full meaning and effect to the material provisions" of a contract, and that "[a] reading of the contract should not render any portion meaningless" (quoting *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318 (N.Y. 2007)). The parties here plainly agreed to bring their claims to state or federal court in Prince George's County, Maryland, unless federal law *required* filing elsewhere, which is not the

case here. Therefore, as applied to the circumstances of this case, the forum-selection clause is mandatory, and since Pitterson concedes that the other requirements have been met, this Court should find that the forum-selection clause is presumptively enforceable.

**II.    Pitterson has not rebutted the presumption that the mandatory forum-selection clause is enforceable.**

Because Defendants have established that the Agreement is presumptively enforceable, the complaint should be dismissed unless Pitterson demonstrates that:  "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips*, 494 F.3d at 392 (citing *Roby*, 996 F.2d at 1363). Pitterson does not argue that the enforcement of the forum selection clause would contravene any policy specific to New York, and accordingly, has not established that this is a ground to deny enforcement of the forum-selection clause. Further, and for the reasons that follow, Pitterson cannot establish any of the remaining grounds for not enforcing the clause at issue here, much less make a "sufficiently strong" showing as required under *Phillips*.

**a.    The mandatory forum selection clause was incorporated into the Agreement without fraud or overreach.**

Pitterson contends that fraud and overreach occurred here because the Agreement was executed on May 7, 2024, after Pitterson allegedly started work in connection with Defendants. Opposition at 13. There is no merit in this contention. The Agreement itself establishes the activities in which these parties were engaged prior to May 7, 2024. Namely, Pitterson was soliciting work from Defendants by responding to Defendant Flavors' request for proposals

3

("RFP"). See Defendants' Memorandum in Support of 12(b)(6) Motion, Exh. A (Article II. Background). Specifically, the Agreement explains that Pitterson:

> submitted a proposal in response to [Defendant Flavor's] Request for Proposals for [Pitterson] to develop and/or provide educational curriculum and content based on their area of expertise, and to teach said curriculum at the designated teach times to Program participants.

Moreover, when the Agreement was executed, Pitterson was acting not as a naïve individual susceptible to fraud but, rather, as an owner of a business entity bearing her name. Pitterson had the requisite business savvy to fully understand all the Agreement's terms, including its forum-selection clause, when she executed it. Moreover, the activities leading to the execution of the Agreement (i.e., development of the proposed educational curriculum and content) necessarily relate to the Agreement and, as such, are covered by the forum-selection clause, which supports finding that dismissal is warranted.

### b. Maryland contract law is fair, and Maryland courts are equipped to resolve all the claims at issue here; no one will be deprived of their day in court.

The bulk of Pitterson's opposition focuses on fairness and convenience, at times conflating the two concepts. *See* Opposition at 4-11. Fairness can be addressed in short order—the federal district court in Prince George's County is perfectly capable of fairly adjudicating not only the federal and state wage-and-hour claims at issue here but also any related contractual issues. Nothing in the Opposition suggests otherwise.

With respect to convenience, Pitterson contends that she and other Plaintiffs would be adversely impacted by traveling to Prince George's County, Maryland to participate in a legal proceeding. Opposition at 4. Pitterson suggests that she would be deprived of her day in court if she were required to try this case in Maryland. Opposition at 6 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38 (S.D.N.Y. 2020)). In support, Pitterson

notes that Rule 45 permits issuance of subpoenas commanding a person's attendance at a trial, hearing, or deposition, within 100 miles of where the person resides, is employed, or regularly transacts business, and Pitterson asserts that she and similarly situated individuals reside more than 200 miles away from Prince George's County, Maryland. Opposition at 8. But it must be noted that Pitterson responded to an RFP issued by Defendant Flavors, a Maryland-based company. Pitterson cannot now complain about having to resort to a Maryland-based court to resolve claims relating to and arising out of the Agreement that resulted from *her decision* to respond to the RFP. *See Fasano*, 47 F.4th at 101 ("showing of mere inconvenience to parties or witnesses is not sufficient" to rebut the presumptive validity of a forum selection clause). Moreover, Pitterson was well aware of the distance between Kings County, New York and Prince George's County, Maryland when she executed the Agreement with its forum-selection clause. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972) ("Whatever 'inconvenience' [a party] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting."). To the extent that there are similarly situated individuals (though, Defendants contend there are no current or former contractors based in New York), they too should not be permitted to complain about the inconvenience of having to litigate their claims against this Maryland-based employer in a Maryland-based court, as required under the plain terms of the independent contractor agreement.

## III.    Transfer is not permitted under Rule 12(b)(6) motion.

Pitterson incorrectly asserts throughout the Opposition that Defendants have moved to transfer this case. *See, e.g.,* Opposition at 4 n. 2 ("Plaintiff focuses on the standard for Defendant's motion to transfer . . . ."), and 7 (stating the standard for motions pursuant to Rule 12(b)(3)). Pitterson then relies on this incorrect framing of the issue to attempt to shift the burden to

5

Defendants to establish that transfer is justified based on the convenience of the parties and witnesses. *See* Opposition at 4-7 (discussing standard for a motion to transfer). Lost on Pitterson is the fact that transfer principles apply only where there are two or more district courts with jurisdiction over the claims at issue, *and* the moving party requests a transfer. Where, as here, Defendants have moved pursuant to Rule 12(b)(6) for dismissal for failure to state a claim upon which the Eastern District of New York can grant relief, the question presented is solely whether the court should dismiss the complaint for lack of authority to adjudicate the claims. *See, e.g., Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 451 (E.D.N.Y. Feb. 17, 2025) (declining to undergo transfer analysis where parties did not brief issue under Section 1404(a) and motion did not implicate Rule 12(b)(3)).

Even if the court could ignore the forum-selection clause and *sua sponte* address the propriety of Pitterson's transfer argument, Defendants note that Pitterson's contentions about convenience and the locus of operative facts rely, at best, on assumptions which lack any grounding in the allegations of the instant complaint. In regard to convenience, Pitterson assumes that similarly situated individuals might not be responsive to attempts to contact them (Opposition at 8); that Defendants' witnesses are current employees and, as such, can be compelled to appear in New York (Opposition at 9); and that *multiple* critical witnesses will not be able to participate in a trial held in Maryland (Opposition at 9-10). Notably, Pitterson has failed to identify a single non-party witness who cannot be compelled to testify in Maryland. *See* Opposition at 11 n. 3.

With respect to the locus of operative facts, Pitterson contends that Defendants failed to address this point, suggesting that Defendants did not do so because this factor weighs in favor of denying the motion currently before the Court. Contrary to Pitterson, Defendants did not address this point because it is not a factor for the Court to consider in determining whether to dismiss the

complaint on a Rule 12(b)(6) motion based on a forum-selection clause. In any event, if it were a factor, Defendants note, again, that Pitterson initiated communication with a Maryland-based company when she responded to Defendant Flavors' RFP. And while Pitterson astutely notes one of the contractual obligations included a single "special presentation in New York" (Opposition at 12), she completely ignores that the Agreement also required her to appear multiple times, outside of New York, at locations including Hyattsville, Maryland. *See* Defendants' Memorandum in Support of 12(b)(6) Motion, Exh. A. ("Payment for Services" section). Thus, the Agreement's service terms support finding that the locus of operative facts lies in Maryland, not New York.

## CONCLUSION

Rather than addressing the merits of the Defendants' contention that the instant complaint must be dismissed under Rule 12(b)(6), Pitterson has chosen to wrestle with transfer principles which are not currently before the Court. In doing so, Pitterson has failed to rebut the presumption that the forum selection clause requiring this action be brought in Prince George's County, Maryland, is enforceable. No amount of repleading will erase the forum selection clause of the Agreement Pitterson executed here. Defendants accordingly request that the Court grant this motion to dismiss and do so without providing Pitterson with an opportunity to file an amended complaint in the Eastern District of New York.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2025, a true and correct copy of the foregoing was served via email only to the following:

Emanuel Kataev, Esq.
SAGE LEGAL LLC
18211 Jamaica Avenue
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff Janelle Pitterson*

<u>/s/ Roya Vasseghi</u>